ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 18 2026

at 12 o'clock and 59 min. P M
Lucy H. Carrillo, Clerk

cc: DKW + filer

DI WU
2995 Woodside Rd, #199
Woodside, CA 94062
Tel: 202-798-8535
Email: Difinity812@gmail.com
Plaintiff, Pro Se

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAIʻI**

| | |
|---|---|
| **DI WU,**<br>Plaintiff,<br>vs.<br>**KING EYE LLC,** a Delaware limited liability company; **KOOHOO HALE LLC,** a Delaware limited liability company registered in Hawaiʻi; **DANDAN ZHANG,** an individual; **TIM MO,** an individual; **SHI CHEN,** an individual; and **DOES 1–10,**<br>Defendants. | CIVIL NO. 1:26-cv-00350-DKW-WRP<br>**FIRST AMENDED COMPLAINT FOR:**<br>(1) Fraudulent Transfer (HRS ch. 651C);<br>(2) Constructive Trust;<br>(3) Equitable Lien;<br>(4) Unjust Enrichment;<br>(5) Quantum Meruit;<br>(6) Declaratory and Injunctive Relief;<br>(7) Civil RICO — 18 U.S.C. § 1962(c); and<br>(8) Civil RICO Conspiracy — 18 U.S.C. § 1962(d)<br>**DEMAND FOR JURY TRIAL**<br>**(Amended as a matter of course — Fed. R. Civ. P. 15(a)(1)(B))** |

## FIRST AMENDED COMPLAINT

Plaintiff **DI WU** ("Plaintiff" or "Wu"), appearing *pro se*, amends his Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and for his First Amended Complaint against Defendants **KING EYE LLC**, **KOOHOO HALE LLC**, **DANDAN ZHANG**, **TIM MO**, **SHI CHEN**, and **DOES 1–10**, alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action to redress an organized, years-long scheme to strip Plaintiff of his asserted ownership interest in the residence located at **1039 Koohoo Place, Kailua, Hawaiʻi 96734**, Tax Map Key (1) 4-3-006-016 (the "Property"), and to place the Property beyond his reach by moving it through a succession of concealed-ownership shell entities. Plaintiff asserts a **25% ownership interest** in the Property under a

written Joint Venture / Capital Contribution Agreement executed on **May 28, 2020** — an interest a Hawaiʻi trial court rejected on procedural grounds now challenged on appeal (¶¶ 36–36B); he paid for approximately **$2,300,000 in improvements** furnished to the Property; and, beginning in 2022 and continuing through 2026, Defendants and their associates disclaimed that interest, seized the Property, and conveyed it twice — first to a concealed-membership shell and then to a Delaware entity formed the same day as its acquisition and held behind a single foreign nominal member — so as to defeat Plaintiff's interest while concealing true beneficial ownership.

2. Plaintiff's Hawaiʻi-law claims — fraudulent transfer, constructive trust, equitable lien, unjust enrichment, and quantum meruit — seek to reach the Property in the hands of its current record owner and its immediate predecessor and to recover the value of the improvements. Plaintiff additionally pleads claims under the **Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO")**. The RICO claims are pleaded as good-faith merits claims arising from the entire 2020–2026 course of conduct: a continuing association of persons and entities used the interstate and international wires to execute and conceal successive fraudulent transfers of the Property, defeating an ownership interest they knew Plaintiff held. Plaintiff presently knows the external acts, instruments, chronology, entities, deed consideration, and disclosed nominal ownership; the internal communications, instructions, beneficial-ownership records, and complete fund trace are within Defendants' and their associates' exclusive control and will be identified through discovery.

3. Defendant **King Eye LLC** is the Property's current record owner. It was formed in Delaware **on the very day** the deed conveying the Property to it was executed, through a mass-formation registered agent, with its ownership placed behind a single foreign nominal member, **Yun Yao**. As alleged below, the Property was not publicly available for sale when King Eye acquired it — the only public listing had been withdrawn after

Plaintiff recorded notice of his claim — so that an unconnected arms-length buyer would have had no way to learn the Property was available for acquisition. This is especially so as to an **unconnected foreign purchaser** who has **no residency in, and no local connection to, Hawaiʻi** — a person with no ordinary or reasonable means of even learning that this particular off-market residence existed, was available, or could be acquired, and no reasonable channel through which to identify, evaluate, and decide to purchase an approximately **$3 million** Kailua home that had been withdrawn from the public market after Plaintiff gave notice of his claim.

4. Plaintiff seeks avoidance of the fraudulent transfers under Hawaiʻi law; the imposition of a constructive trust and equitable lien upon the Property and its proceeds; restitution of the value of the improvements he paid to furnish; treble damages and attorney's fees under **18 U.S.C. § 1964(c)** on the RICO counts; and declaratory and injunctive relief preserving the Property pending resolution of this action.

## II. PARTIES

5. Plaintiff **Di Wu** is a natural person and a **resident of the State of California**.

6. Defendant **King Eye LLC** ("King Eye") is a limited liability company organized under the laws of the **State of Delaware** (Delaware Division of Corporations File No. 10510718), formed on or about **February 12, 2026**, through the mass-formation registered agent **Harvard Business Services, Inc.**, 16192 Coastal Highway, Lewes, Delaware 19958. King Eye is the current record owner of the Property. King Eye is a **"person"** within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

7. Defendant **Koohoo Hale LLC** ("Koohoo Hale") is a limited liability company organized under the laws of the **State of Delaware** and registered to transact business in Hawaiʻi as a foreign limited liability company (Hawaiʻi Department of Commerce and Consumer Affairs ("DCCA") File No. 323585 C6, registered July 5, 2024), with its statutory registered agent **Paracorp Incorporated**, 900 Fort Street Mall, Suite 1680,

Honolulu, Hawai'i 96813, and a mailing address at the Property itself. A person identified as **Shi Chen** appears in the public record as its Manager. Koohoo Hale was the record owner of the Property from on or about June 3, 2024 until it conveyed the Property to King Eye. Koohoo Hale is a **"person"** within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

8. Defendant **Dandan Zhang** ("Zhang") is, on information and belief, a natural person who held record title to the Property as Plaintiff's nominee under the 2020 Joint Venture / Capital Contribution Agreement, disclaimed Plaintiff's interest, and set in motion the transfers of the Property described herein. Zhang is a **"person"** within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

9. Defendant **Tim Mo** ("Tim Mo") is, on information and belief, a natural person — identified by that name in a percipient witness's contemporaneous account (¶ 28) — who acted as an **operational coordinator** for the Enterprise and who, in concert with Zhang, staged the physical takeover of the Property and directed the removal of Plaintiff's personal property in 2022, and who, on information and belief, participated in the continuing scheme to disclaim and conceal Plaintiff's interest. Tim Mo is a **"person"** within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c). *Plaintiff will amend to state Tim Mo's true and full legal name upon ascertaining it.*

9A. Defendant **Shi Chen** ("Shi Chen") is, on information and belief, a natural person who appears in the public record as the **Manager** — and, on information and belief, the nominal sole member — of **Koohoo Hale LLC**, the shell entity to which the Property was first conveyed. As alleged in ¶ 34A, Plaintiff pleads in the alternative and on information and belief that Shi Chen, like the King Eye nominal member, is a nominal or interposed holder installed to receive and conceal beneficial ownership of the Property for undisclosed principals, rather than a bona fide manager or member exercising independent control. Shi Chen is a **"person"** within the meaning of 18

U.S.C. §§ 1961(3) and 1962(c). *Plaintiff will amend to state Shi Chen's further identifying particulars upon ascertaining them.*

10. **Defendants DOES 1–10** are the natural persons and entities who formed, funded, directed, controlled, and benefited from the enterprise and from the acquisition, transfer, and concealment of the Property, whose true names and capacities are presently concealed behind the corporate shells and foreign nominees described herein. On information and belief, DOES 1–10 include the true beneficial owner(s) of King Eye and Koohoo Hale, the persons who introduced and instructed the transferees, and the persons who supplied and moved the funds recited as consideration. Plaintiff will seek leave to name these Defendants upon ascertaining their true identities and roles through discovery.

## III. JURISDICTION AND VENUE

11. **Federal-question jurisdiction.** This Court has subject-matter jurisdiction under **28 U.S.C. § 1331** and **18 U.S.C. § 1964(c)** because Counts VII and VIII arise under the laws of the United States — the civil RICO provisions of 18 U.S.C. §§ 1961–1968. Federal-question jurisdiction does not depend upon the citizenship of any party.

12. **Supplemental jurisdiction.** This Court has supplemental jurisdiction over the Hawai'i-law claims (Counts I through VI) under **28 U.S.C. § 1367(a)** because those claims are so related to the federal RICO claims that they form part of the same case or controversy, arising from the same nucleus of operative facts — the acquisition, transfer, and concealment of the Property and the value of Plaintiff's improvements.

13. **Domestic injury.** Plaintiff's injuries are **domestic injuries to business and property** within the meaning of *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016). The injured property — the Property, the improvements incorporated into it, and Plaintiff's identifiable ownership interest in it — is located in the State of Hawai'i, and the injury was suffered in the United States. Plaintiff seeks no recovery for any foreign injury.

14. **Venue** is proper under **18 U.S.C. § 1965(a)** and **28 U.S.C. § 1391(b)(2)** because Defendants transact affairs in this District, a substantial part of the events giving rise to the claims occurred in this District, and **the real property that is the subject of the action is situated in this District**, in Kailua, City and County of Honolulu, State of Hawaiʻi. Nationwide service of process is available under **18 U.S.C. § 1965(b) and (d)**.

15. This Court has authority to grant declaratory relief under **28 U.S.C. §§ 2201–2202** and to impose the equitable remedies requested under the substantive law of Hawaiʻi and RICO.

15A. **Personal jurisdiction.** This Court has personal jurisdiction over each Defendant. Each Defendant purposefully directed conduct at the State of Hawaiʻi arising out of or relating to the claims: **Koohoo Hale** and **King Eye** acquired, hold or held, and transacted with respect to **Hawaiʻi real property**, and Koohoo Hale registered to transact business in Hawaiʻi and appointed a Hawaiʻi registered agent; **Zhang** held Hawaiʻi record title, made representations to Honolulu Police concerning the Hawaiʻi Property, and executed the Hawaiʻi conveyance; **Tim Mo**, on information and belief, personally acted within Hawaiʻi — appearing at the Hawaiʻi Property to stage its occupancy and to remove Plaintiff's personal property in coordination with Zhang; and **Shi Chen** is the Manager of record of a Hawaiʻi-registered limited liability company whose sole asset was the Hawaiʻi Property and whose registered mailing address was the Hawaiʻi Property itself, and on information and belief participated in receiving and holding Hawaiʻi record title to the Property. In addition, and independently, nationwide service of process and the resulting personal jurisdiction are available for the RICO claims under **18 U.S.C. § 1965(b) and (d)**.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Documented Ownership Interest — the 2020 Joint-Venture Agreement

16. Plaintiff's interest in the Property is documented by a written **Joint Venture / Capital Contribution Agreement executed on May 28, 2020** (the "JV Agreement"), which was produced in related Hawai'i litigation (Case No. 1CCV-22-0000964) and which Defendant Zhang authenticated by her own contemporaneous communications. Under the JV Agreement, **Zhang held a 75% interest and Plaintiff held a 25% interest** in the joint acquisition of the Property, which was purchased for approximately **$1,850,000** (JV Agreement ¶ 1); **Zhang held record title as nominee** for the joint venture, so that the Property could qualify for an owner-occupant tax treatment (JV Agreement ¶ 3); the agreement contained an express covenant that neither party would unilaterally sell, transfer, mortgage, or encumber the Property **without the consent of both** parties (JV Agreement ¶ 6); and it granted Plaintiff a **right of first refusal** on any disposition (JV Agreement ¶ 7).

17. Zhang's interest and Plaintiff's are further confirmed by **Zhang's own communications**, produced by Zhang in the related litigation (Bates E1–E438), in which Zhang wrote that she would "draft a property joint purchase agreement to protect both side," acknowledged that Plaintiff was a "joint owner with your money invested but not in the title," and recited that the 75/25 split had been honored "in these three years." These are party admissions authenticating both the JV Agreement and Plaintiff's asserted ownership interest. The JV Agreement and the admissions are **authenticated record evidence of Plaintiff's asserted 25% interest and of the associates' knowledge of that asserted interest** — the knowledge that makes the later disclaimer and transfers fraudulent.

17A. Plaintiff's claims do not depend on proof of fraudulent intent at the 2020 inception; the pattern and the fraudulent transfers alleged herein arose no later than 2022 and continued through the 2024 and 2026 conveyances. **In the alternative, and on information and belief, Plaintiff alleges that Zhang's design to deprive him of his**

**interest may have existed from the inception of the joint venture.** That suspicion arises from Zhang's own contradictory positions — most notably her 2022 statement to law enforcement that she did not know Plaintiff, flatly contrary to the joint-venture agreement she signed and the parties' documented dealings — and from unresolved questions as to whether the instruments bearing her signature were genuinely hand-executed by her. Plaintiff has been unable to test these matters because Zhang and the other principals have avoided service and deposition and none has yet been questioned under oath. Plaintiff pleads this theory on information and belief and expressly reserves it for development through discovery. As set forth in ¶¶ 36–36B, the legal effect of the JV Agreement is presently the subject of Plaintiff's pending appeal, and Plaintiff pleads his interest here as that of a disputed, contingent creditor rather than as an already-adjudicated fact.

**B. Plaintiff's Funding and Paid-For Improvements**

18. Plaintiff funded his 25% share of the acquisition and paid for the substantial improvements to the Property. That funding is established by **documentary records** — including bank and wire-transfer records, escrow records, and contemporaneous written communications (including the Zhang-produced WeChat records, Bates E1–E438) — showing Plaintiff's payments into the acquisition and toward the construction. This documentary funding record is **further corroborated** by sworn deposition testimony in Case No. 1CCV-22-0000964. **Jason Tootell**, the nominal sole officer and director of **Global Chain, Inc.**, a Hawai‘i corporation, testified under oath on **November 30, 2022** that Plaintiff — not Tootell — created and controlled Global Chain; that the Global Chain bank accounts "were his [Plaintiff's] accounts"; that the accounts "w[ere] used to pay for stuff on every single property that was related to [Plaintiff]," expressly including **1039 Koohoo Place**; and that Plaintiff "put in **$500,000** of his money" toward the Property. Tootell's testimony thus side-confirms that the construction and

improvement work at the Property was funded solo by Plaintiff.

19. Tootell also testified that **Dandan Zhang** "was under the thumb of" a man named **Xin Liu** (a non-party), and that pressure connected to that individual was the reason "all [Plaintiff's] stuff got stolen." This testimony corroborates that Plaintiff funded the Property and that Zhang acted at the direction and under the control of others — including one or more of the concealed Doe principals — in the events concerning the Property.

20. The improvement work was performed by **Homage Builder (Danny Miao), a Hawaiʻi-licensed contractor, Hawaiʻi contractor license No. BC-35490**, whom Plaintiff engaged and paid; the contractor's invoice, reflecting the licensed contractor's identity and license number, is part of the record and was authenticated in sworn deposition testimony in the related Hawaiʻi litigation. In that deposition testimony in Case No. 1CCV-22-0000964, **Danny Miao confirmed under oath** that Plaintiff — and Plaintiff alone — funded and paid for the construction at the Property. Asked who paid for the work at 1039 Koohoo Place, Miao testified that Plaintiff "took care of all of those things," paying him "by cash, check, or wire"; he confirmed that he received **no payments from Dandan Zhang** ("no other people"); and he testified that he took his instructions **solely from Plaintiff**, explaining, "I only accept instructions from him because it was him who paid me." Miao's authenticated **Homage Builders independent-contractor invoice** for the 1039 work reflects a construction cost of **$1,563,121.93** (Miao Depo. Ex. 9, Bates WuDi0000992). Because the improvements were performed by a duly licensed Hawaiʻi contractor whom Plaintiff paid, Plaintiff's claim is for the money and value he supplied — not for unlicensed contracting services — and **HRS § 444-22 does not bar recovery**.

21. **Joe Uno Associates**, a **top Hawaiʻi construction appraisal firm**, prepared an analysis estimating that the renovation improvements would have cost **in excess of $2,300,000**

in the Hawaiʻi market. Plaintiff possesses before-and-after photographic documentation of the improvements together with the Joe Uno Associates analysis and related records. Independent market data further corroborates that it is **Plaintiff's improvements — not passive market appreciation — that account for the Property's increase in value**. The Property was acquired in 2020 for approximately **$1,850,000**. Published market data confirms that residential values in Kailua appreciated over the ensuing period only at **modest single-digit annual rates**: according to the Zillow Home Value Index, the typical home value in Kailua, Hawaiʻi was approximately **$1,532,217 as of July 31, 2026**, reflecting an increase of only approximately **1.6% over the preceding year**, consistent with low single-digit annual appreciation across the relevant period. Applying even a generous single-digit annual rate to the 2020 acquisition price would yield a 2026 value of roughly **$2.2 to $2.5 million** — far below Defendants' **own recited 2026 transfer consideration of $3,390,000** (¶ 32). Ordinary market appreciation alone therefore accounts for only a fraction of that increase; the balance of that increase is attributable to the substantial renovation improvements Plaintiff paid to furnish, independently valued **in excess of $2,300,000** by Joe Uno Associates. Even taking Defendants' recited transfer price at face value, ordinary market forces cannot explain the gap between the 2020 purchase price and the 2026 recited value — **only Plaintiff's contribution can**. The improvements were furnished with the reasonable expectation of compensation and/or of a corresponding interest in the Property; were known to and accepted by the persons and entities who held or controlled the Property; and **no person or entity has ever paid or reimbursed Plaintiff for them**.

**C. The 1039 Property Enterprise**

22. At all relevant times there existed an **association-in-fact enterprise** within the meaning of **18 U.S.C. § 1961(4)** (the "1039 Property Enterprise" or "Enterprise"), consisting of **Dandan Zhang, "Tim Mo," Koohoo Hale LLC, King Eye LLC, Yun Yao, Shi**

**Chen, and the Doe principals** who formed, funded, instructed, and benefited from the chain of transfers, associated together for the common purpose of acquiring, transferring, retaining, and concealing the Property so as to defeat, impair, and place beyond reach Plaintiff's asserted 25% interest while concealing true beneficial ownership. The Enterprise functioned as a continuing unit with a structure and relationships separate and apart from the pattern of racketeering activity in which it engaged. *See Boyle v. United States*, 556 U.S. 938, 946 (2009).

23. **The Enterprise's structure and relationships are documented.** Zhang held record title as nominee under the JV Agreement (¶ 16) and acted at the direction of the concealed principals (¶ 19). "Tim Mo" acted as an operational coordinator who, in concert with Zhang, staged the 2022 physical takeover of the Property and directed the removal of Plaintiff's personal property (¶ 28). Koohoo Hale and King Eye are successive title-holding entities, each with concealed or nominal ownership, that received and held the Property in sequence. Shi Chen appears as Koohoo Hale's Manager of record. The Doe principals introduced the transferees, gave the instructions, and supplied and moved the funds. These persons and entities occupied distinct, coordinated roles — titleholder-nominee, operational coordinator, successive transferees, manager, and concealed principals — organized to accomplish and perpetuate the transfer and concealment of a single Property over a multi-year period. *Boyle*, 556 U.S. at 946 (an association-in-fact enterprise requires a purpose, relationships among the associates, and longevity sufficient to pursue the purpose).

24. **The chain of title and control runs Zhang → Koohoo Hale → King Eye / Yao, directed by concealed principals.** On information and belief: (a) Zhang, holding title as Plaintiff's nominee and acting at the direction of the concealed principals, disclaimed Plaintiff's interest and set the transfers in motion, while "Tim Mo" coordinated the physical dispossession of the Property; (b) the Property was conveyed to **Koohoo Hale**

**LLC**, a concealed-membership shell; and (c) the Property was then conveyed to **King Eye LLC**, formed the same day as the deed to it and placed behind the single foreign nominal member **Yun Yao**. Each link served the Enterprise's common purpose. The documentary and financial evidence connecting each link — including the source and flow of the funds recited as consideration, the identity of the persons who introduced and instructed the transferees, and the beneficial-ownership records of the shells — is presently within Defendants' and their associates' exclusive control and is a subject of discovery.

25. **The Enterprise is engaged in, and its activities affect, interstate and foreign commerce**, including transactions in the Hawaiʻi real-property market, the formation of Delaware entities, and the transmission of funds and instruments across state and national boundaries in connection with the acquisition and transfer of the Property.

**D. Additional Associates and Source-of-Funds Context (Pleaded on Information and Belief)**

26. On information and belief, additional persons associated with the Enterprise, and the funds used to acquire the Property, are connected to a Hangzhou-based family and financial bloc. **Qing Xu (Xu Qing)** is the chairman and actual controller of a Hangzhou enterprise; **Ying Xu (Xu Ying)** is his sister; and **Yilin Feng (Feng Yilin)** is Ying Xu's daughter. In or about **September 2017**, these three executed a formal "Agreement on Acting in Concert," documenting their coordination as a bloc. Members of this bloc are the members of record of a cluster of Hawaiʻi limited liability companies sharing the same formation date, address, and registered agent: **210S LLC** (DCCA File No. 194687 C5) and **Hawaii Elim LLC** (DCCA File No. 194688 C5), each formed **May 22, 2018**, each at **150 Hamakua Drive #852, Kailua**; and **135 Kaka Investments LLC** at the same address. Plaintiff pleads these relationships on information and belief as **enterprise-relationship, method, and source-of-funds context**; the internal

records establishing each associate's precise role in the 1039 transfers are a subject of discovery.

27. On information and belief, and as reported in the Chinese financial press (IPO Daily / Sohu.com), **Xu Ying** has been publicly connected to three bribery matters involving official favors in land, demolition, and securities-listing matters. Plaintiff pleads this **as reporting, not as a conviction of record**, and on information and belief, as part of a **source-of-funds and tracing context**: the People's Republic of China imposes an ordinary individual annual foreign-exchange conversion quota of approximately USD 50,000 with anti-structuring rules, such that the multimillion-dollar funds recited as consideration for the off-market acquisition of the Property present a legitimate subject for tracing discovery into their true source and path. Plaintiff does **not** allege as established fact that the acquisition funds are proceeds of any specified unlawful activity; the underlying PRC court, securities-regulatory, and banking records are outside Plaintiff's present possession and are a subject of discovery and, where necessary, letters rogatory or Hague Evidence Convention process.

**E. The 2022 Takeover of the Property (Corroborating Pattern Evidence)**

28. In or about **August–September 2022**, associates of the Enterprise caused the **physical takeover of the Property** and the removal of Plaintiff's personal property. On or about **July 29, 2022**, an off-duty Honolulu Police Department officer, **Casey Melvin**, recruited another off-duty officer, **Ilse Pratt**, to occupy the Property under a fabricated "rental" arrangement, representing that the owner was an "old timid gentleman" whose nephew owned "about ten properties in Lanikai." That description did not, and could not, correspond to the Property's record titleholder: **Dandan Zhang is a woman**, not any "old timid gentleman," which exposes the "rental" cover story as a fabrication designed to conceal the true ownership dispute and to install occupants under false pretenses. Pratt was directed to a coordinator, Defendant **"Tim Mo,"** who staged the

occupancy in coordination with Zhang. On or about **July 30, 2022**, "Tim Mo" arrived with two to three unknown males in a truck and **removed Plaintiff's personal property**. "Tim Mo" thereby acted as an operational coordinator of the Enterprise, executing — in concert with Zhang — the physical takeover and dispossession that the Enterprise used to seize and control the Property while concealing Plaintiff's interest, and, on information and belief, he participated in the same continuing course of conduct that culminated in the 2024 and 2026 transfers.

29. On or about **August 1, 2022**, responding Honolulu Police Department officers found Pratt and her family in the residence. **Dandan Zhang** represented to the responding officers that she **did not know Plaintiff** and that she was the **sole owner** of the Property. That representation was **false**, as the JV Agreement and Zhang's own contemporaneous admissions (¶¶ 16–17) reflect: Zhang had acknowledged in writing that Plaintiff was a joint owner holding a 25% interest with Zhang holding title as nominee. On or about **September 14, 2022**, the Honolulu Police Department classified the incident as **Burglary in the First Degree** (case card No. 22-296496-002), documented Plaintiff's loss at approximately **$502,800**, and recovered surveillance video of two males at the Property's gate. The 2022 takeover and Zhang's knowingly false disclaimer are pleaded as **evidence of the Enterprise's common purpose, coordination, and method** — obtaining and holding the Property while concealing Plaintiff's interest — and not as predicate acts of racketeering activity.

**F. The Concealed-Ownership Transfers and the Off-Market Acquisition (2024–2026)**

30. **The Property was withdrawn from the market during the pendency of Plaintiff's claim, and Plaintiff's recorded notices of that claim were expunged by the same court whose rulings he is challenging on appeal.** The Property was publicly listed for sale on one occasion. During the pendency of the related state litigation concerning Plaintiff's asserted interest, the listing broker **withdrew the listing**, and the Property

was **never again publicly listed** for sale. To give record notice of his asserted interest and of the pending litigation and appellate proceedings, Plaintiff recorded a notice of pendency of action (lis pendens) against the Property, and later re-recorded that notice specifically to preserve record notice of his then-pending appeal before the **Intermediate Court of Appeals**. The **First Circuit trial court — the same court that had entered the procedural summary judgment Plaintiff is challenging on appeal (¶¶ 36–36A)** — expunged Plaintiff's recorded notice **(Dkt. 435, May 20, 2024)**, and, after Plaintiff re-recorded notice of his claim to preserve record notice of the pending appellate proceedings, expunged that later notice as well **and imposed a monetary sanction**, in each instance **over Plaintiff's contemporaneous and repeated objections of record**. Plaintiff contends that the later expungement rested on a determination — that Plaintiff had accepted or conceded that his claim to the Property was moot — that Plaintiff **expressly disputed in open court at the time it was stated and repeatedly contested of record thereafter**, and that the notice so expunged concerned matters **then pending before the Intermediate Court of Appeals**, such that the trial court **acted without jurisdiction** to disturb it while that appeal remained undecided. Plaintiff further contends that these rulings were entered in the same manner as the summary judgment Plaintiff is appealing — on adverse determinations attributed to Plaintiff without a meaningful opportunity to be heard. Plaintiff has appealed the later expungement and the associated fee award, and that appeal — **CAAP-25-0000532 — remains pending**. The **June 3, 2024** transfer to Koohoo Hale followed within weeks of the first expungement, and the **February 2026** transfer to King Eye followed the second — in each instance while Plaintiff's underlying claim and appellate challenges remained **pending and known** to the persons controlling the Property.

31. **First transfer — June 3, 2024 (Zhang → Koohoo Hale).** On or about **June 3, 2024**, while the related state litigation concerning the Property and Plaintiff's asserted claim was pending, the Property was transferred **by deed to Koohoo Hale LLC** (Document No. **T12572189**) for a recited consideration of approximately **$1,900,000**. Koohoo Hale **later registered** in Hawaiʻi as a foreign LLC (DCCA File No. 323585 C6, registered July 5, 2024 — approximately one month after it acquired the Property), with its mailing address listed as the Property itself and Shi Chen identified as Manager, its members concealed. On information and belief, this transfer was made and received with knowledge of Plaintiff's asserted 25% interest and his pending claim, for the purpose of moving the Property beyond his reach and concealing beneficial ownership.

32. **Second transfer — February/March 2026 (Koohoo Hale → King Eye/Yao).** On or about **February 12, 2026, King Eye LLC was formed in Delaware** (File No. 10510718) through a mass-formation registered agent, and on or about **the same day** — by deed executed on or about February 12, 2026 and recorded on or about March 10, 2026 (Document No. **T13217047**) — the Property was transferred **from Koohoo Hale to King Eye for a recited $3,390,000**, with King Eye's ownership placed behind a single foreign nominal member. On information and belief, this transfer, too, was executed with knowledge of Plaintiff's interest and claim and for the purpose of further concealing beneficial ownership behind a newly created, foreign-nominal-member entity.

33. **The off-market acquisition connects King Eye and Yao to the Enterprise.** Because the Property's only public listing had been withdrawn and the Property was not publicly for sale (¶ 30), acquiring it would likely have required a private introduction to, or communication from, a person controlling the Property. On information and belief, King Eye and Yao learned of and acquired the off-market Property because they were

acting in concert with, and at the direction of, the persons controlling the Enterprise — not as an unconnected arms-length purchaser. This fact tends to exclude the innocent explanation of an ordinary market purchase. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014).

34. **Yun Yao is, on information and belief, a nominal member selected, installed, or interposed to hold and conceal the Property for undisclosed principals, not a bona fide arms-length purchaser.** This inference arises from the entire sequence: (a) Yao is the single member of a Delaware LLC formed the same day as its acquisition of Hawai'i real property (¶¶ 3, 32); (b) King Eye was formed through a mass-formation registered agent used to shield beneficial ownership (¶ 6); (c) Yao's only appearances in any United States proceeding are declarations executed remotely from **Hangzhou, PRC**, bearing an electronic-signature fingerprint (**Authentisign**) consistent with remote execution of an attorney-prepared document, each using a defective oath that does not comply with 28 U.S.C. § 1746(1) (¶ 35); (d) neither declaration attaches any independent proof of Yao's identity or capacity — no passport, formation record, member ledger, operating agreement, or tax record; and (e) the Property was acquired off-market and immediately placed behind Yao's single foreign name (¶ 33). Plaintiff pleads **in the alternative and on information and belief** that Yao is a nominal or interposed member acting for undisclosed principals; Plaintiff does **not** allege as established fact that no such person exists or that Yao has never entered or transacted in the United States. The true facts of Yao's role, capacity, and source of funds are within Defendants' exclusive control and are a subject of discovery.

34A. **Shi Chen is, on information and belief, a nominal Manager and member interposed to hold and conceal the Property for undisclosed principals, not a bona fide controlling manager of Koohoo Hale.** This inference arises from the same pattern and from an internal contradiction in the record: (a) although the public record identifies

**Shi Chen** as the Manager (and, on information and belief, the nominal sole member) of Koohoo Hale, it was **Dandan Zhang** — not Shi Chen — who is reflected in the related state-court record as having acted with respect to Koohoo Hale's acquisition of the Property, so that the person of record does not correspond to the person exercising control; (b) Koohoo Hale was a Delaware entity that registered in Hawai‘i only approximately one month **after** it acquired the Property (¶ 31), used a commercial registered agent, and listed the Property itself as its mailing address; (c) Koohoo Hale's members were concealed and the Property was its only apparent asset; and (d) the Property passed through Koohoo Hale for only a brief interval before being conveyed onward to King Eye behind a further foreign nominal member (¶¶ 32–34). Plaintiff pleads **in the alternative and on information and belief** that Shi Chen is a nominal or interposed holder acting for undisclosed principals; Plaintiff does **not** allege as established fact that no such person exists. The true facts of Shi Chen's identity, role, and relationship to Zhang and the other associates are within Defendants' exclusive control and are a subject of discovery.

**G. The Enterprise's Use of Unauthenticated Foreign Declarations (Evidence Only)**

35. The Enterprise employs a **repeatable method** of interposing foreign nationals who execute attorney-prepared declarations from the PRC. Two distinct features recur, and Plaintiff pleads them separately. **First, defective oaths.** A declaration signed outside the United States must, to be competent, be subscribed "under penalty of perjury under the laws of the United States of America" as required by 28 U.S.C. § 1746(1). Both the **Declaration of Yilin Feng** (executed "DATED: HANGZHOU, China," July 5, 2023) and the **Declaration of Yun Yao** in this action (executed in Hangzhou, PRC) instead use a bare "penalty of law" formulation that omits the operative words "perjury" and "under the laws of the United States of America," and neither bears any notarization, consular authentication, or Hague apostille. On that basis Plaintiff contends that **Yao's**

**declaration is not a competent § 1746 declaration** and cannot supply admissible proof of Yao's identity, capacity, or the facts it recites. **Second, remote execution.** Yao's declaration bears an **Authentisign** electronic-signature fingerprint consistent with remote execution of a document prepared by others and attaches no independent proof of identity or capacity. These declarations, involving different foreign nominal actors in service of the **same objective**, are pleaded **as evidence** of a single Enterprise operating a common, repeatable method, and as circumstantial support for the inference that its foreign nominal signatories — including Yao — are interposed nominees rather than true principals. They are **not pleaded as predicate acts of racketeering activity**, but only as evidence of the Enterprise and its method. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006).

**H. The Related State Litigation (Candid Disclosure)**

36. Plaintiff has litigated aspects of his interest in the Property in the Hawaiʻi state courts, and discloses the adverse rulings candidly. In Case No. 1CCV-22-0000964, on Defendant Zhang's **Motion for Summary Judgment filed August 30, 2024 (Dkt. 507)**, the state court entered **Findings of Fact, Conclusions of Law, and an Order granting that motion, electronically filed on October 30, 2024 (Dkt. 547)**. That order did not rest on any merits determination. It rested on a **procedural default**: appearing pro se, Plaintiff miscalculated the response deadline and served his response to Zhang's First Request for Admissions a short time late, and the requests were therefore **deemed admitted** under Hawaiʻi Rule of Civil Procedure 36. On the strength of those deemed admissions alone, the court treated the joint-investment agreement and a residential lease as **forgeries** and rejected Plaintiff's asserted title and related claims. **It did so notwithstanding the substantial documentary evidence of record establishing both Plaintiff's investment and his improvements** — including the parties' own certified financial records (bank statements, wire transfers, and payment records reflecting

Plaintiff's capital contribution and payments toward the Property) and the documentary proof of the improvements Plaintiff paid to furnish (the licensed contractor's invoices and cost records). The court weighed none of that evidence on its merits; the dismissal turned entirely on the deemed admissions arising from a single late-served discovery response. Plaintiff has never conceded those admissions, timely challenged the ruling as unjust, and has appealed it; the matter remains **pending in the state appellate courts as CAAP-26-0000401** (Notice of Appeal filed February 23, 2026; docketed May 27, 2026). Under published Hawai'i authority, a **timely-appealed trial-court judgment is not final for res judicata purposes** while the appeal remains pending. *See In re Mitsuo Yoneji Revocable Trust.*

36A. The Court should understand the resulting conflict plainly. **The state trial court deemed the joint-investment agreement forged through procedural admissions** — not through any merits determination of credibility or a contested evidentiary hearing. **Plaintiff contends that Defendant Zhang's own discovery production and her contemporaneous communications (¶¶ 16–17) authenticate the May 28, 2020 Joint Venture / Capital Contribution Agreement**, and Plaintiff challenges the forgery ruling and the underlying deemed admissions in **CAAP-26-0000401**. Accordingly, Plaintiff does **not** plead his 25% interest as an already-established fact; he pleads his position as that of a **disputed and contingent creditor whose claim is presently on appeal**, a status that HRS § 651C-1 defines to include a disputed, contingent, and unliquidated right to payment. Plaintiff's claims in this action are pleaded **independently and in the alternative, to the extent not precluded**, so as not to depend on relitigating any issue finally decided against him: the fraudulent-transfer claim rests on Plaintiff's status as a creditor holding a claim, and the constructive-trust, equitable-lien, unjust-enrichment, and quantum-meruit claims are pleaded as **restitution for the value of the improvements Plaintiff paid to furnish**. Plaintiff

acknowledges that the state judgment also dismissed his improvement-related claims, and that if that judgment is affirmed some or all of these claims may face a preclusion defense; Plaintiff pleads them to the extent they are not ultimately precluded and does not ask this Court to disregard the state rulings.

36B. The same summary-judgment pattern has already been corrected on appeal in the companion case arising from the same dispute. In the parallel District Court action, **Zhang v. Wu, Case No. 1DRC-22-0005097**, Zhang likewise obtained summary judgment, a Judgment for Possession, and a Writ of Possession against Plaintiff. On appeal, the **Intermediate Court of Appeals** held that the District Court **erred**, and by Opinion filed **January 9, 2026** (Wadsworth, J.) **vacated** the summary-judgment order, the Judgment for Possession, and the Writ of Possession, and remanded for further proceedings; the Judgment on Appeal issued **April 30, 2026** (ICA No. CAAP-23-0000380). The **Hawaiʻi Supreme Court rejected Zhang's application for a writ of certiorari on June 24, 2026** (No. SCWC-23-0000380), leaving that reversal **final**. The state appellate courts have thus already found that entering summary judgment against Plaintiff on this dispute was error — a determination directly bearing on the reliability of the parallel procedural summary judgment now on appeal in CAAP-26-0000401.

## V. CAUSES OF ACTION

### COUNT I — FRAUDULENT TRANSFER (HRS Chapter 651C) *(Against Dandan Zhang, Koohoo Hale LLC, and King Eye LLC)*

37. Plaintiff realleges and incorporates paragraphs 1 through 36B.

38. Plaintiff holds a **"claim"** within the meaning of HRS § 651C-1 — a defined term that expressly includes a right to payment whether or not it is **disputed, contingent, or unliquidated** — and is therefore a **"creditor"** as to **Dandan Zhang**, the debtor-transferor who held record title to the Property immediately before the June 3,

2024 conveyance and who was subject to Plaintiff's asserted 25% interest, right of first refusal, and no-transfer covenant under the JV Agreement (¶¶ 16–17, 36–36B). Plaintiff's status as a creditor holding a claim does not depend on final adjudication of the priority or precise extent of that interest.

39. **Transfer by the debtor (HRS § 651C-4).** The **June 3, 2024 conveyance from Zhang to Koohoo Hale** (Doc. No. T12572189) was a transfer made by the debtor **with actual intent to hinder, delay, or defraud** Plaintiff, HRS § 651C-4(a)(1). The following badges of fraud, supported by the facts pleaded above, attend the transfer: the transfer occurred while Plaintiff's claim was pending and within weeks of the trial court's contested expungement of Plaintiff's recorded lis pendens (¶¶ 30–31); it **violated the express no-transfer covenant and right of first refusal** in the JV Agreement (¶ 16); it was made to a **concealed-membership shell** whose mailing address was the Property itself (¶¶ 7, 31); it was one of a **series of successive transfers** among concealed-ownership entities (¶¶ 31–32); and, on information and belief, it was made to place the Property beyond Plaintiff's reach while concealing beneficial control (¶ 24).

40. **Relief against subsequent transferees (HRS § 651C-8). King Eye LLC** holds the Property as a subsequent transferee. Plaintiff is entitled to avoidance of the transfers and to recover the Property or its value from King Eye and Koohoo Hale to the extent permitted by HRS § 651C-8, because, on information and belief, neither took **in good faith and for a reasonably equivalent value** without knowledge of Plaintiff's claim: each acquired the Property off-market with knowledge of Plaintiff's recorded interest, through concealed or nominal ownership, and as part of the coordinated chain alleged above.

41. Plaintiff is entitled to **avoidance of the transfers**, attachment of the Property and its proceeds, and injunctive relief against further transfer or encumbrance, under **HRS §**

**651C-7**.

**COUNT II — CONSTRUCTIVE TRUST** ***(Against King Eye LLC and Koohoo Hale LLC)***

42. Plaintiff realleges and incorporates paragraphs 1 through 36B.

43. Plaintiff asserts a **25% ownership interest** in the Property, documented by the authenticated JV Agreement (¶¶ 16–17) and presently the subject of a pending appeal (¶¶ 36–36B), and paid for improvements incorporated into the Property (¶¶ 18–21). Defendants and their predecessors acquired and now hold the Property, including the enhanced value attributable to Plaintiff's interest and paid-for improvements, through concealed-ownership transfers and an off-market acquisition designed to defeat Plaintiff's identifiable interest and with knowledge of Plaintiff's recorded claim. **Plaintiff's interest has priority** over the transferees, who did not take as good-faith purchasers for value without notice (¶¶ 30–33, 40). Defendants therefore hold the Property and its enhanced value subject to a **constructive trust** in Plaintiff's favor, to prevent unjust enrichment.

44. Plaintiff is entitled to the imposition of a **constructive trust** upon the Property and/or its proceeds to the extent of his interest and the value of his improvements. This relief is sought **in the alternative** to, and without duplication of, the damages sought on other counts.

**COUNT III — EQUITABLE LIEN** ***(Against King Eye LLC and Koohoo Hale LLC)***

45. Plaintiff realleges and incorporates paragraphs 1 through 36B.

46. Plaintiff's paid-for labor, materials, and improvements were incorporated into the Property and substantially enhanced its value, and Plaintiff has not been compensated. Because Plaintiff's contribution is identifiable in and has enhanced the Property, because Plaintiff's interest has priority over transferees who did not take in good faith for value without notice (¶ 40), and because a remedy at law is inadequate in light of Defendants'

pattern of transferring the Property among concealed-ownership entities, equity requires that the Property be charged with the obligation to compensate Plaintiff.

47. Plaintiff is entitled to an **equitable lien** upon the Property, not less than **$2,300,000**, to be enforced by foreclosure and sale if not satisfied, sought **in the alternative** to and without duplication of the other counts.

**COUNT IV — UNJUST ENRICHMENT** ***(Against King Eye LLC and Koohoo Hale LLC)***

48. Plaintiff realleges and incorporates paragraphs 1 through 36B.

49. Plaintiff conferred a benefit upon Defendants and their predecessors-in-interest by paying for approximately **$2,300,000** in labor, materials, and improvements, performed by a licensed Hawai‘i contractor, that were incorporated into and enhanced the value of the Property. Defendants and their predecessors-in-interest **knew of and accepted** the benefit, which remains incorporated into the Property now held by King Eye. It would be **inequitable** for Defendants to retain the enhanced value without compensating Plaintiff, particularly where the Property was moved among concealed-ownership entities and acquired off-market with knowledge of Plaintiff's claim.

50. Plaintiff is entitled to **restitution** of the value of the benefit conferred, in an amount not less than **$2,300,000**, sought **in the alternative** to and without duplication of the other counts.

**COUNT V — QUANTUM MERUIT** ***(Against Dandan Zhang; and King Eye LLC and Koohoo Hale LLC as successors holding the enhanced value)***

51. Plaintiff realleges and incorporates paragraphs 1 through 36B.

52. Plaintiff paid for and furnished valuable improvements to the Property with the reasonable expectation of compensation and/or a corresponding interest in the Property. **Defendant Zhang, who held record title at the time the work was performed, requested and/or knowingly accepted the improvements**, and the persons and entities that subsequently held or controlled the Property took it with the enhanced

value incorporated. Plaintiff is entitled to the **reasonable value** of the improvements furnished, in an amount not less than **$2,300,000**, sought **in the alternative** to and without duplication of the other counts.

**COUNT VI — DECLARATORY AND INJUNCTIVE RELIEF** ***(Against All Defendants)***

53. Plaintiff realleges and incorporates paragraphs 1 through 52.

54. An **actual controversy** exists concerning the parties' respective rights and interests in the Property, the validity of the transfers, and Plaintiff's entitlement to a constructive trust and equitable lien. Plaintiff is entitled, under **28 U.S.C. §§ 2201–2202**, to a declaration of the parties' rights, and to **injunctive relief** restraining Defendants from further transferring, encumbering, or disposing of the Property pending resolution of this action, to preserve the status quo and prevent further dissipation of the asset.

**COUNT VII — VIOLATION OF 18 U.S.C. § 1962(c)** ***(Conduct of an Enterprise Through a Pattern of Racketeering Activity — Against Dandan Zhang, Tim Mo, Shi Chen, Koohoo Hale LLC, King Eye LLC, and Does 1–10)***

55. Plaintiff realleges and incorporates paragraphs 1 through 36B.

56. **Enterprise.** The **1039 Property Enterprise** described in paragraphs 22–27 is an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), engaged in and affecting interstate and foreign commerce, with a common purpose, relationships among its associates, and longevity sufficient to pursue that purpose. *Boyle*, 556 U.S. at 946.

57. **Distinctness.** Each Defendant is a **"person"** within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), distinct from the Enterprise, which comprises multiple persons and entities in addition to any single Defendant.

58. **Operation or management.** Each Defendant **conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs** and took **some part in directing** them within the meaning of *Reves v. Ernst & Young*, 507 U.S. 170 (1993):

**Zhang** held title as nominee, disclaimed Plaintiff's interest, and initiated the transfers; **"Tim Mo"** took part in directing the Enterprise's operational affairs by staging, in concert with Zhang, the physical takeover and removal of Plaintiff's property and the concealment of Plaintiff's interest (¶ 28), and, on information and belief, participated in the continuing scheme that culminated in the successive transfers; **Shi Chen**, as the Manager of record of Koohoo Hale, on information and belief took part in Koohoo Hale's receipt, holding, and onward conveyance of record title while concealing beneficial ownership (¶ 34A); and **Koohoo Hale and King Eye, each acting through its controlling members and managers** (including nominal member Yun Yao, manager Shi Chen, and the Doe principals directing them), were formed and used to receive title, execute and record the deeds, and channel and conceal the funds. The Enterprise's affairs were directed by the persons who controlled these actors, not merely furthered by passive vehicles. To the extent Shi Chen or either entity is shown to have acted only as a passive title-holding conduit rather than as a director of the Enterprise's affairs, Plaintiff pleads their liability in the alternative under the RICO conspiracy count (Count VIII), which does not require satisfaction of the operation-or-management test. *See Salinas v. United States*, 522 U.S. 52 (1997).

59. **Pattern of racketeering activity — wire fraud (18 U.S.C. § 1343).** The Enterprise conducted its affairs through a **pattern of wire fraud**, § 1961(1)(B), consisting of at least the following related predicate acts, each a use of interstate or foreign wires in furtherance of a scheme to defeat Plaintiff's known ownership interest by transferring and concealing the Property through deceptive omission and concealment of that interest and of true beneficial ownership:

(a) **Episode E1 (June 2024).** In furtherance of the scheme, in or about May–June 2024, the associates directing Zhang and Koohoo Hale used interstate and/or foreign wires — including electronic communications and fund transfers effecting the closing and the interstate

transmission of the instrument recorded June 3, 2024 as Document No. T12572189 — to convey the Property to Koohoo Hale for a recited $1,900,000 **while concealing Plaintiff's asserted 25% interest and his pending claim** from the transferee's ownership records and from Plaintiff, and while concealing Koohoo Hale's true beneficial ownership. The deceptive purpose was to move the Property beyond Plaintiff's reach; the wires were interstate/foreign because they crossed state and national boundaries in connection with the Delaware entity and the funds; and the act directly furthered the defeat and impairment of Plaintiff's interest.

(b) **Episode E2 (February–March 2026).** In furtherance of the scheme, on or about February 12, 2026, the associates directing King Eye and Koohoo Hale used interstate and foreign wires — including the electronic Delaware formation of King Eye through a mass-formation agent the same day, the transmission of the recited $3,390,000 consideration, and the interstate transmission of the deed recorded March 10, 2026 as Document No. T13217047 — to convey the Property to a same-day-formed entity held behind a single foreign nominal member, **while concealing Plaintiff's interest and the true beneficial ownership**. The deceptive purpose, interstate/foreign character, and causal connection to Plaintiff's injury are as alleged.

60. Each episode is pleaded on the facts presently known; the internal communications, instructions, and fund-flow particulars are within Defendants' exclusive control, and Plaintiff pleads those particulars on information and belief with the factual basis set out above. *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993). The 2020 JV Agreement and 2022 events are pleaded as **evidence of the associates' knowledge and the Enterprise's method**, not as wire-fraud predicates.

61. **Relatedness and continuity.** The predicate acts are **related** — same Property, same victim, same purpose (defeating Plaintiff's interest), same method (concealed-ownership transfers), and same participants. *H.J. Inc. v. Nw. Bell Tel. Co.*,

492 U.S. 229 (1989). The related predicate acts span a multi-year period (2024 and 2026) and are pleaded, in the alternative, as **either** a closed-ended period of related racketeering activity **or** open-ended activity carrying a threat of continuation, given the Enterprise's demonstrated and repeatable nominee/shell/remote-declaration method and the concealment that continues to obstruct Plaintiff's recovery of the Property. Plaintiff does not manufacture a pattern by subdividing a single act; each episode is a distinct transfer executed by distinct wires with distinct instruments and consideration.

62. **Injury and causation.** As a **direct and proximate result** of the § 1962(c) violation, Plaintiff has been injured in his **business and property** by the **defeat and impairment of his asserted 25% ownership interest in the Property** (¶¶ 16–17, 36–36B) and its placement beyond his reach through the concealed 2024 and 2026 transfers. That injury is a **domestic injury** to property located in Hawai'i within the meaning of *RJR Nabisco*, 579 U.S. 325 (2016), and was proximately caused by the racketeering acts — the transfers themselves were the mechanism of the injury, not a remote consequence. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). Plaintiff is entitled to **threefold his damages, together with the costs of suit and reasonable attorney's fees**, under **18 U.S.C. § 1964(c)**.

**COUNT VIII — VIOLATION OF 18 U.S.C. § 1962(d)** ***(RICO Conspiracy — Against Dandan Zhang, Tim Mo, Shi Chen, Koohoo Hale LLC, King Eye LLC, and Does 1–10)***

63. Plaintiff realleges and incorporates paragraphs 1 through 62.

64. Defendants and their co-conspirators **knowingly agreed** to conduct and participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of **18 U.S.C. § 1962(d)**. Each Defendant knew of and agreed to the overall objective — to defeat Plaintiff's asserted interest by acquiring, transferring, and concealing the Property — and agreed that a member of the conspiracy would commit at least two predicate acts of wire fraud in furtherance of it. Liability under § 1962(d)

does not require that a Defendant itself operated or managed the Enterprise; it is sufficient that the Defendant knowingly agreed to facilitate a scheme that, if completed, would satisfy the elements of a substantive RICO offense. *Salinas v. United States*, 522 U.S. 52 (1997).

65. As a **direct and proximate result** of the conspiracy and the overt predicate acts committed in furtherance of it, Plaintiff has been injured in his business and property as alleged, and is entitled to **treble damages, costs, and reasonable attorney's fees** under **18 U.S.C. § 1964(c)**.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

A. On **Count I**, for **avoidance of the fraudulent transfers**, attachment of the Property and its proceeds, and injunctive relief against further transfer, under HRS § 651C-7 and § 651C-8;

B. For the **imposition of a constructive trust** upon the Property and/or its proceeds (Count II);

C. For the **imposition and foreclosure of an equitable lien** upon the Property (Count III);

D. On **Counts IV and V**, for **restitution and money damages** in an amount to be proven at trial, not less than **$2,300,000**;

E. For a **declaration** of the parties' rights and **injunctive relief** restraining any further transfer, encumbrance, or disposition of the Property (Count VI);

F. On **Counts VII and VIII (RICO)**, for **threefold (treble) the damages** sustained by Plaintiff, together with the **costs of suit and reasonable attorney's fees** pursuant to 18 U.S.C. § 1964(c), in an amount to be proven at trial;

G. For **prejudgment and post-judgment interest** as allowed by law;

H. For **costs of suit and reasonable attorney's fees** as allowed by law; and

I. For such **other and further relief** as the Court deems just and equitable.

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to **Federal Rule of Civil Procedure 38(b)**.

DATED: 08.18.2026.

吴迪

_______________________________

DI WU
Plaintiff, Pro Se
Difinity812@gmail.com
Tel: 202-798-8535

## VERIFICATION

I, **DI WU**, the Plaintiff in the above-entitled action, have read the foregoing First Amended Complaint and know its contents. The matters stated therein are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 18, 2026

DI WU
Declarant / Plaintiff, Pro Se
Difinity812@gmail.com
Tel: 202-798-8535