# EXHIBIT 1

STARN O'TOOLE MARCUS & FISHER
A Law Corporation

STEPHANIE E. W. THOMPSON 8399-0
ROBERT J. BROWN 10174-0
Pacific Guardian Center Makai Tower
733 Bishop Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 537-6100

Counsel for Plaintiff DI WU

Electronically Filed
FIRST CIRCUIT
1CCV-22-0000964
21-JUL-2023
02:09 PM
Dkt. 236 CAMD

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| DI WU<br><br>Plaintiff,<br><br>vs.<br><br>DANDAN ZHANG AKA DAN DAN ZHANG, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS, CORPORATIONS, OR ENTITIES 1-20,<br><br>Defendants. | CIVIL NO.: 1CCV-22-0000964<br><br>SECOND AMENDED VERIFIED COMPLAINT; EXHIBITS "A" – "B"; SUMMONS<br><br>Judge: Honorable Dean E. Ochiai<br>Trial Date: May 20, 2024 |

**SECOND AMENDED VERIFIED COMPLAINT**

Plaintiff DI WU ("***Mr. Wu*** " or "***Plaintiff***"), by and through his attorneys, hereby asserts the following Second Amended Complaint against DAN DAN ZHANG, a.k.a. DANDAN ZHANG ("***Defendant***" or " ***Ms. Zhang***") and additional counterclaim defendants (defined below), and avers and alleges as follows:

**PARTIES**

1. DI WU is now, and at all times relevant to the claims asserted herein, a resident of the City and County of Honolulu, in the State of Hawaii.

2. Upon information and belief, Ms. Zhang is a resident of the People's Republic of China.

3. Additional Defendants INDIVIDUAL DOE DEFENDANTS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; DOE GOVERNMENTAL UNITS 1-10, AND DOE TRUSTS 1-10, (collectively "***Doe Defendants***") are persons, partnerships, corporations, trusts, agencies, governmental or other entities sued under fictitious names because their true names and identities are presently unknown to Counterclaimant except, that they are or may be connected to the events that are the subject of this lawsuit or acting in concert with one or more of the other Defendants herein, are or may be liable to Counterclaimant for the relief demanded herein. Counsel for Counterclaimant has made a good faith and diligent search to ascertain the names and identities of such defendants, but has been unable to obtain additional identities, and therefore requests the Court to allow leave to certify their true names, identities, activities, and responsibilities if the same are subsequently ascertained.

4. All Defendants, including but not limited to the Ms. Zhang and Doe Defendants (defined above, and collectively referred to herein as "***Defendants***"), acted as agents, servants, employees, employers, representatives, co-conspirators, associates, or independent contractors of each other. The term "***Parties***" shall refer to Defendant and Mr. Wu, collectively.

**JURISDICTION**

1. This Court has This Court has jurisdiction and venue over the Parties named herein under Hawai'i Revised Statutes ("***HRS***") § 634-35, as the real property, transactions, and tortious conduct alleged herein arise within this state. Defendants are subject to the jurisdiction of the Court because he/they reside and/or conduct business in this Circuit and the tortious conduct alleged herein occurred within this Circuit.

2. This Court has subject matter jurisdiction over this matter pursuant to HRS § 603-21.5(a)(3).

3. Venue is proper in the Circuit Court of the First Circuit, State of Hawaii pursuant to HRS § 603-36(5).

**FACTS COMMON TO ALL CLAIMS**

4. In or around April 2018, the Parties began online discussion through WeChat.

5. The Parties began discussing a plan to purchase and develop real property on Oahu.

6. In or around May 2019, the Parties decided to jointly purchase real property located at 1039 Koohoo Place, Kailua, Hawaii 96734 (the "***Property***").

7. In furtherance of their decision to purchase and develop the Property for a profit, the Parties negotiated and agreed to a joint venture property investment agreement (the "***JV Agreement***").

8. The Parties agreed to put Ms. Zhang on title for the Property, but split the interest to the Property: 75% to Ms. Zhang, and 25% to Mr. Wu, with profits and losses to be shared similarly.

9. The Parties further agreed that in the event one Party intended to transfer his/her rights to a third party, the other Party would have the right of first refusal.

10. The Parties recognized and acknowledged that the Property at the time of purchase needed extensive and immediate repairs in order for it to be habitable.

11. Based on the Parties' agreements and promise made under the JV Agreement, Mr. Wu transferred and committed funds for the purchase of the Property, thereby enabling the Parties to successfully purchase the Property.

12. Mr. Wu paid to Ms. Zhang approximately $220,000, as contribution to the funds necessary to purchase the Property.

13. The Parties' JV Agreement was reduced to a writing, a true and correct copy of which is attached hereto as Exhibit A.

14. The purchase of the Property closed, and the deed was recorded on July 3, 2019.

15. After the closing on the Property, and based on the Parties' agreements under the JV Agreement, Mr. Wu took possession of the Property and began extensive repairs and renovations at the Property.

16. By agreement and consent of the Parties, Mr. Wu paid approximately $1.6 million, for the repairs, remodeling and renovations, including the related legal costs, undertaken at the Property.

17. Additionally, during the course of the Parties' joint venture relationship, Mr. Wu transferred money to Ms. Zhang (or to her husband on her behalf) so that the property taxes for the Property could be paid.

18. Mr. Wu also transferred additional funds to Ms. Zhang and/or her husband for, among other things, the payment of the property taxes and miscellaneous materials.

19. The effects of the global pandemic and changes in Hawaii law forced the parties to alter their original plans for the Property. The global pandemic adversely impacted the parties' ability to quickly repair or renovate the luxury Property and find appropriate renters for the Property.

20. In June 2021, in light of the Parties' JV Agreement and their mutual interest in the Property, and given the negative effects of the global pandemic on the Parties' plans for the

Property, the Parties agreed that Mr. Wu would rent the Property under a ten year long term lease (the "***Lease***").

21. Under the terms of the Parties' Lease, the Parties' agreed, among other things, to the following:

a. Mr. Wu and his family would reside at the Property;

b. Mr. Wu would pay to Ms. Zhang $20,000 a year as rent;

c. Rent would be due at the end of each calendar year.

22. The Parties' Lease was reduced to a writing, a true and correct copy of which is attached hereto as Exhibit B.

23. The Lease also provides to Mr. Wu the right to sublease the Property.

24. Mr. Wu paid rent to Ms. Zhang as agreed to by the parties under the terms of the Lease.

25. Mr. Wu has fully performed under the terms of the Lease.

26. On July 29, 2022, without notice, communication, or cause, Ms. Zhang, (with the assistance of others, and while Mr. Wu was vacationing on the mainland with his family), broke into the Property, changed the locks, and installed "new" renters at the Property.

27. These individuals, at the direction of Ms. Zhang, removed Mr. Wu's and his family's significant personal and business property and belonging from the Property.

28. On July 29, 2022, while on the mainland, Mr. Wu received notification from his security cameras he installed at the Property that two men were attempting to gain access to the Property. Fearful that someone had broken into the home, Mr. Wu immediately returned to Oahu and contacted the police.

29. Police reports obtained by Mr. Wu confirm that Ms. Zhang initiated a scheme to break into the Property, without Mr. Wu's knowledge or consent, change the locks, remove Mr. Wu's and his family's belongings and install new renters at the Property in his stead.

30. Statements taken by the police from independent, credible witnesses confirm Ms. Zhang's scheme to wrongfully remove Mr. Wu from the Property, without his knowledge or consent.

31. The new "renters" purportedly installed at the Property by agents or representatives of Ms. Zhang were informed she//he/they could stay at the Property temporarily. On information and belief, no rental agreement was executed between Ms. Zhang (or her representatives) and the new renters.

32. Also on information and belief, Ms. Zhang did not charge any rent to the new renters.

33. When the police appeared at the Property, on or about August 1, 2022, and were presented with the facts relating to Mr. Wu's and his family's possession of the Property, the police put Mr. Wu in possession of the Property and the "renters" voluntarily left the Property.

34. Ms. Zhang never informed Mr. Wu of her intent to travel to Oahu in late July 2022, prior to the break in at the Property on July 29, 2022.

35. Prior to July 29, 2022, Ms. Zhang never informed Mr. Wu of her intent to engage Mr. Thompson Pham, to break into the Property, change the locks, and remove personal property from the Property.

36. When questioned by the police on or about August 1, 2022, Ms. Zhang denied even knowing Mr. Wu.

37. Subsequent to the removal of the personal and business property belonging to Mr. Wu and his family from the Property, demand was made to Ms. Zhang, by and through her attorneys, that the property and belongings be returned to Mr. Wu.

38. Ms. Zhang refused to immediately return the personal property and belongings Mr. Wu, contending that Mr. Wu must first pay for all the costs of transport and storage for the personal property.

39. On or about September 14, 2022, Mr. Wu filed a statement with the Honolulu Police Department, in which he detailed the personal property and documents taken from the Property on or about July 29, 2022 through August 1, 2022.

40. At that time, Mr. Wu estimated the value of the personal property wrongfully taken from the Property to be in excess of $500,000.

41. On August 12, 2022, Mr. Wu commenced this civil proceeding against Ms. Zhang in the Circuit Court of the First Circuit, State of Hawaii.

42. On August 15, 2022, Ms. Zhang filed her complaint for ejectment against Mr. Wu in the District Court of the First Circuit, State of Hawaii

43. On or about January 28, 2023, Mr. Wu was finally provided access to the storage units into which his and family's belongings, documents and other personal items had been purportedly stored after Ms. Zhang's removal of the same from the Property during the weekend of May 29, 2022.

44. On or about January 30, 2023, Ms. Zhang and her attorneys' announced that they would be keeping approximately seven (7) boxes of original documents and items and not returning these items to Mr. Wu. Ms. Zhang and her attorneys' stated that these documents and items were the property of Ms. Zhang, or several of her attorneys' "other" clients—to which they

had a right to access and ownership. Upon information and belief, Ms. Zhang is not a party to her attorneys' "other" cases involving different clients.

45. Ms. Zhang and her attorneys' have wrongfully withheld and converted Mr. Wu's and his family's personal and business information and items for their own use.

46. To date, Mr. Wu has still not received many of the items listed in his original statement to the police.

47. Mr. Wu has not received the originals of confidential personal and business information.

**COUNT I**

Breach of Contract (Lease)

48. Plaintiff realleges the allegations contained in paragraphs 1-47 as if fully set forth herein.

49. The Lease existing between the Parties constituted a valid contract that imposed duties and conditions on the Parties.

50. The Lease provided that Mr. Wu would have the right to possess the Property for ten (10) years, and that Mr. Wu could use portions of the Property for "other rentals or sublease purpose [sic]."

51. The Lease further provided that Mr. Wu would pay rent of $20,000 each year to Ms. Zhang.

52. Rent would be due at the end of each of the calendar year.

53. Mr. Wu agreed to pay, and Ms. Zhang agreed to accept rent in the form of bitcoin and cash.

54. In 2021, Mr. Wu paid to Ms. Zhang rent in the form of bitcoin, valued in excess of approximately $50,000 at the time.

55. Ms. Zhang and her husband willingly accepted this bitcoin payment as rent.

56. Mr. Wu has also paid to Ms. Zhang's attorneys' an additional $20,000 in January 2023, as rent, as a show of good faith during the pendency of the litigation in the district court case.

57. Based on the payments of bitcoin and cash (some of which is still being held by Ms. Zhang's attorneys), Mr. Wu has paid rent through 2024.

58. Mr. Wu's contributions to Ms. Zhang for the purchase price of the Property, the extensive costs of the remodel, the money paid to Ms. Zhang and her husband for the payment of the property taxes, as well as the payment of rent through 2024, constitute good and valuable consideration of the parties' Lease.

59. Mr. Wu has fully performed under the terms of the parties' Lease.

60. In late July 2022, Ms. Zhang wrongfully attempted to remove Mr. Wu from the Property in violation of the Lease terms.

61. Ms. Zhang failed to provide the proper notice to Mr. Wu regarding her intent to access the Property.

62. Ms. Zhang failed to provide proper notice to Mr. Wu regarding her intent to remove Mr. Zhang from the Property.

63. Ms. Zhang has breached the terms of Parties' Lease by, among other things, engaging agents to break into the Property, change the locks, install new "renters" at the Property, and remove valuable personal and business property belonging to Mr. Wu and his family.

64. Ms. Zhang has also breached the terms of the Parties' Lease by wrongfully retaining Mr. Wu's and his family's personal and business property and documents without consent or permission.

65. Ms. Zhang has further breached the terms of the Parties' Lease by disclaiming the existence of the Lease and initiating ejectment proceedings.

66. Ms. Zhang has breached the terms of the Lease by attempting to cancel the Lease.

67. Ms. Zhang has also breached the covenant of good faith and fair dealing inherent in every contract by, among other things, the actions described herein, but also by wrongfully seeking to remove Mr. Wu from the Property.

68. Ms. Zhang has breached the covenant of good faith and fair dealing by failing to perform her duties under the Lease in commercially reasonable and responsible manner.

69. As a direct and proximate result of Ms. Zhang's actions or omissions, Mr. Wu has suffered damages in amounts to be proven at trial.

**COUNT II**

Breach of Implied Contract (In the Alternative)

70. Plaintiff realleges the allegations contained in paragraphs 1 – 68 as if fully set forth herein.

71. In the alternative to claims asserted in Count I, the Parties demonstrated a mutual intention to enter into a lease agreement on the terms described herein, thereby creating an implied contract between them.

72. This implied contract obligated the Parties thereto to perform in accordance with the terms of their mutual promises and agreements.

73. Mr. Wu fully performed his duties and obligations under the terms of the implied contract, to include the payment of rent to Ms. Zhang.

74. Mr. Wu's performance takes the parties' agreement out of the Statute of Frauds.

75. Ms. Zhang breached the implied contract by, among other things:

a. Disclaiming and/or denying the existence of the parties' implied contract;

b. Attempting to remove Mr. Wu and his family from the Property, without proper notice or cause;

c. Removing Mr. Wu's and his family's the personal property and valuables from the Property, without proper notice or consent.

d. Wrongfully retaining Mr. Wu's and his family's personal and business property and documents without consent or permission.

76. Ms. Zhang also breached her obligation of good faith and fair dealing implied in every contract (express and implied) in the manner detailed herein.

77. As a direct and proximate result of Ms. Zhang's actions and/or omissions, Mr. Wu has suffered damages in amounts to be proven at trial.

**COUNT III**

Specific Performance (Lease)

78. Plaintiff realleges the allegations contained in paragraphs 1-77 as if fully set forth herein.

79. The Lease between the Parties constitutes a valid and enforceable contract between them.

80. The Lease provides that Mr. Wu is entitled to occupy and use the Property for a specific term of ten years.

81. As detailed herein, Mr. Wu has fully performed under the terms of the Lease, and has duly tendered performance of his duties under the Lease.

82. Mr. Wu has provided good and valuable consideration for the rights and obligations described in the Lease.

83. Ms. Zhang's attempts to remove Mr. Wu from the Property constitutes a material breach of the Lease terms.

84. Mr. Wu is entitled to use and occupy the Premises in accordance with the terms of the Lease, so long as he abides by its terms.

85. Mr. Wu stands ready, willing and able to fully perform under the terms of the parties' Lease.

86. Because Mr. Wu's rights to use and occupy the Property, for a specific term and specific rent constitute unique interests in the Property, Mr. Wu lacks an adequate remedy at law and is entitled to invoke the equitable jurisdiction of this Court for specific performance.

87. Consequently, Mr. Wu is entitled to the quiet use and enjoyment of the Property and order from this Court enforcing his rights under the contract to do so.

88. As a direct and proximate result of Defendant's breaches of the Lease, described herein, Mr. Wu is entitled to specific performance of the contract, together with recovery of Plaintiff's costs associated with Defendant's breaches thereof, including but not limited to his attorneys' fees and costs in connection with this action.

## COUNT IV
Injunctive Relief

89. Plaintiff realleges the allegations contained in paragraphs 1-88 as if fully set forth herein.

90. Pursuant to the terms of the Lease, and Ms. Zhang's duties of good faith to Mr. Wu, inherent in every contract, Ms. Zhang is not permitted to cancel or forfeit Plaintiff's rights to use and occupy the Property as set forth in the Lease.

91. Moreover, Ms. Zhang is not permitted to cancel or forfeit Mr. Wu's rights of first refusal contained in the JV Agreement, so long as Mr. Wu abides by and properly exercises those rights and obligations under the terms of the JV Agreement.

92. Because Mr. Wu's rights to use and occupy the Property and his right to exercise his first right of refusal (when and if the circumstances arise) constitute unique interests in the Property, Mr. Wu lacks an adequate remedy at law and is entitled to invoke the equitable jurisdiction of this Court for injunctive relief.

93. Mr. Wu is entitled to an order enjoining Ms. Zhang from removing him or Mr. Wu's family or their property and belongings from the Property, or from cancelling Mr. Wu's rights of first refusal.

## COUNT V
Declaratory Relief

94. Plaintiff realleges the allegations contained in paragraphs 1-93 as if fully set forth herein.

95. An actual controversy exists between Plaintiff and Defendant in that Plaintiff has a legal relation, status, right or privileges in which he has concrete interests under the terms of the Lease and the JV Agreement.

96. Defendant challenges and/or denies Plaintiff's asserted relation, status, right or privileges arising from or existing under the Parties' Lease and JV Agreement.

97. A declaratory judgment will serve to terminate the uncertainty or any controversy giving rise to these proceedings.

98. Plaintiff is entitled to a judgment, pursuant to Section 632-1 of the Hawaii Revised Statutes, declaring that:

a. The Lease is a valid, enforceable contract between the Parties for the Property, thereby establishing a landlord/tenant relationship between the Parties.

b. The Parties are obligated under the clear terms of the Lease to perform in accordance therewith.

c. The JV Agreement is a valid and enforceable contract between the parties thereby establishing a joint venture relationship between the Parties.

d. The Parties are obligated under the clear terms of the JV Agreement to perform in accordance therewith.

**COUNT VI**
Breach of Contract (JV Agreement)

99. Plaintiff realleges the allegations contained in paragraphs 1-98 as if fully set forth herein.

100. In 2019, Mr. Wu entered into partnership or joint venture partnership with the Ms. Zhang in accordance with Hawaii Revised Statutes § 425-109, as described above.

101. The JV Agreement was valid and enforceable, and imposed on Ms. Zhang a duty to abide by its terms, including but not limited to Mr. Wu's right of first refusal, and the Parties' agreements for the sharing of the costs of the repairs to the Property, as well as any profits.

102. Mr. Wu's contributions to Ms. Zhang for the purchase price of the Property, the extensive costs of the remodel which he supervised and paid, his contribution of funds for the payment of the property taxes, among other contributions, constitute good and valuable consideration of the parties' JV Agreement.

103. Mr. Wu fully performed his duties and obligations under the JV Agreement, by among other things, committing money to the purchase of the Property, funding and supervising the repairs and renovations at the Property, and contributing funds to Ms. .Zhang for the payment of the property taxes at the Property.

104. Ms. Zhang breached the JV Agreement, by, among other things

a. failing to honor and acknowledge the Parties' JV Agreement;

b. failing to provide Mr. Wu with a first right of refusal;

c. failing to properly compensate Mr. Wu for his capital contributions.

105. There is implied in every contract a duty of good faith and fair dealing.

106. Ms. Zhang breached her duty of good faith and fair dealing in the performance of her duties under the joint venture agreement by, among other things, failing to pay Mr. Wu what he is owed for his contributions to the Property, and seeking to disclaim the existence of the joint venture partnership and Mr. Wu's right of first refusal.

107. As a direct and proximate result of Ms. Zhang's actions or omissions, Mr. Wu has suffered damages in amounts to be proven at trial, including but not limited to his share of the joint venture profits.

**COUNT VII**

Breach of Implied Contract (in the Alternative, for the JV Agreement)

108. Plaintiff realleges the allegations contained in paragraphs 1 - 105 as if fully set forth herein.

109. In the alternative, to Count VI t Mr. Wu and Ms. Zhang demonstrated a mutual intention to enter into a joint venture or partnership agreement, thereby creating an implied contract between them.

110. This implied contract obligated the parties thereto to perform in accordance with the terms of the joint venture agreement.

111. Mr. Wu fully performed his duties and obligations with respect to the investment of funds for the purchase, repairs, and property taxes, and otherwise, under the implied contract.

112. Ms. Zhang breached the implied contract by, among other things:

a. failing to honor and acknowledge the Parties' JV Agreement;

b. failing to provide Mr. Wu with a first right of refusal; and

c. failing to properly compensate Mr. Wu for his capital contributions.

113. Ms. Zhang also breached her obligation of good faith and fair dealing implied in every contract (express and implied) in the performance of her duties under the implied contract as detailed herein.

114. As a direct and proximate result of Ms. Zhang's actions or omissions, Mr. Wu has suffered damages in amounts to be proven at trial, including but not limited to their share of the joint venture profits.

**COUNT VIII**

Specific Performance (JV Agreement)

115. Plaintiff realleges the allegations contained in paragraphs 1 - 114 as if fully set forth herein.

116. The JV Agreement between the Parties constitutes a valid and enforceable contract between them.

117. The JV Agreement provides, among other things, that Mr. Wu is entitled to profits from the JV Agreement split 75/25%: 75% to Ms. Zhang, and 25% to Mr. Wu.

118. Additionally, the JV Agreement provides that in the event that Ms. Zhang decides to transfer her interest in the Property to a third party, the other party (Mr. Wu) would have the right of first refusal.

119. As detailed herein, Mr. Wu has fully performed under the terms of the JV Agreement, and has duly tendered performance of his duties under the JV Agreement.

120. Mr. Wu has provided good and valuable consideration for the rights and obligations described in the JV Agreement.

121. Ms. Zhang's attempts to disclaim the validity of the Parties' JV Agreement and cancel Mr. Wu's rights of first refusal and of his profits under the terms of the JV Agreement constitute material breaches of the JV Agreement's terms.

122. Mr. Wu is entitled to the rights, obligations and benefits afforded him under the parties' JV Agreement, which includes a right of first refusal.

123. Mr. Wu stands ready, willing and able to fully perform under the terms of the Parties' JV Agreement.

124. Because Mr. Wu's rights of first refusal and right to the profits arising from the Property constitute unique interests in the Property, Mr. Wu lacks an adequate remedy at law and is entitled to invoke the equitable jurisdiction of this Court for specific performance.

125. Consequently, Mr. Wu is entitled to his right of first refusal as stated under the terms of the JV Agreement, and order from this Court enforcing his rights under the JV Agreement.

126. As a direct and proximate result of Defendant's breaches of the JV Agreement (described herein), Mr. Wu is entitled to specific performance of the Parties' contract (the JV Agreement), together with recovery of Plaintiff's costs associated with Defendant's breaches thereof, including but not limited to his attorneys' fees and costs in connection with this action.

**COUNT IX**
Quantum Meruit/Unjust Enrichment

127. Plaintiff realleges the allegations contained in paragraphs 1 - 126 as if fully set forth herein.

128. Mr. Wu fully performed his duties and obligations under the Lease, as described herein.

129. Mr. Wu fully performed his duties and obligations under the JV Agreement, as described herein.

130. Ms. Zhang has been unjustly enriched by, among other things, Mr. Wu's payment of a portion of the purchase priced needed to secure ownership of the Property, the payment and performance of the renovation and repairs to the Property (approximating $1.6m), the payment of

rent to Ms. Zhang, and the contribution of funds for the payment of the property taxes for the Property.

131. These investments of money and services were provided with the expectation that the successful sale of the Property would benefit Mr. Wu in that he would realize a profit and be reimbursed for his efforts and the investments of time and money spent in the performance of his duties under the Lease and the JV Agreement.

132. Ms. Zhang failed to fully perform the duties and obligations pertaining to her under the Parties' Lease and JV Agreement, as described herein.

133. Ms. Zhang has unjustly benefitted from the efforts and investments of time and money by Mr. Wu, by, among other things, significantly improving the quality of the Property through the planning, execution and payment of important repairs and upgrades to the Property, the payment of rent, and the contribution of funds for the payment of property taxes for the Property.

134. It would be unjust for Ms. Zhang to retain the benefit of the investment of money, compensation and efforts of Mr. Wu as described above without providing Mr. Wu with a mutual benefit.

135. As a direct and proximate result of Ms. Zhang's actions or omissions, Mr. Wu has suffered injury in an amount to be proven at trial.

136. Under the equitable principles of *quantum meruit*, Mr. Wu is entitled to payment in the amount by which Ms. Zhang has been unjustly enriched in her retention of the benefits of the Mr. Wu's efforts, services and investments of time and money.

/ / /

/ / /

**COUNT X**
Promissory Estoppel

137. Plaintiff realleges the allegations contained in paragraphs 1 – 136 as if fully set forth herein.

138. Pursuant to the parties joint venture partnership, Ms. Zhang promised Mr. Wu that she would compensate him for his efforts, investments of time and money to purchase, maintain, repair and renovate the Property.

139. Ms. Zhang also promised to Mr. Wu that he would have a first right of refusal for the Property should she decide to transfer or sell her interest in the Property.

140. Ms. Zhang also promised Mr. Wu that so long as he timely paid rent of $20,000 at the end of each year, he could reside at the Property, for at least ten (10) years.

141. In reasonable reliance on Ms. Zhang's promises, Mr. Wu provided Ms. Zhang investments of time and money to purchase, maintain, repair and renovate the Property.

142. Additionally, in reasonable reliance on Ms. Zhang's promises, Mr. Wu provided Ms. Zhang rent in the form of cash and/or bitcoin, as requested.

143. Mr. Wu also provided substantial contributions of both time, money and his services to Ms. Zhang in reasonable reliance of Ms. Zhang's promises, as detailed herein.

144. Instead of proceeding with her promises under the Parties' joint venture partnership, Ms. Zhang has disclaimed any existence of any such joint venture, and has refused to provide Mr. Wu just, fair compensation for his performance and reliance based Ms. Zhang's promises.

145. By her actions and/or omissions described herein, Ms. Zhang failed to fulfill her promises regarding payments of compensation and/or profits to Mr. Wu investments and compensation provided by Mr. Wu.

146. Ms. Zhang has also failed to fulfill her promises regarding Mr. Wu's right to the quiet use and enjoyment of the Property under the terms of the Lease.

147. As a direct and proximate result of Ms. Zhang's promises, Mr. Wu invested substantial efforts, time and money into the Parties' joint venture to his detriment, in an amount to be shown at trial.

**COUNT XI**
Theft/Conversion

148. Plaintiff realleges the allegations contained in paragraphs 1 - 147 as if fully set forth herein.

149. On or about July 29, 2022, Ms. Zhang conspired with others, to break into the Property, change the locks, install new renters at the Property and then remove all of Mr. Wu's and his family's belongings and possessions from the Property

150. Ms. Zhang knew that the belongings she directed to be removed from the Property on or about July 29 or July 30, 2022, did not belong to her.

151. Ms. Zhang in concert with others purposefully failed to timely and properly alert Mr. Wu or his family regarding their plans to break into the Property and remove all of Mr. Wu's and his family's possessions and belongings.

152. Inasmuch as Ms. Zhang knew that Mr. Wu and his family resided at the Property, and knew that he would be away from the Property the weekend of July 29, 2022, she knew that Property contained personal and business property belonging to Mr. Wu and his family.

153. Mr. Wu never consented or gave permission to Ms. Zhang, or anyone purporting to act on her behalf, to access the Property on July 29, 2022,

154. Mr. Wu never consented or gave permission to Ms. Zhang, or anyone purporting to act on her behalf, to change the locks at the Property.

155. Mr. Wu never consented or gave permission to Ms. Zhang, or anyone purporting to act on her behalf, to remove his and or his family's personal and business possessions from the Property.

156. Mr. Wu never consented or gave permission to Ms. Zhang, or anyone purporting to act on her behalf, to dispose of or store his or his family's personal and business possessions from the Property, once they were removed.

157. Since the date of the removal of Mr. Wu's and his family's personal and business property and valuables from the Property, until January 2023, Mr. Wu has wrongfully been denied access to the personal property and valuables. To this day, many of the personal and business property and valuables belonging to Mr. Wu and his family, some of which are irreplaceable, have yet to be returned to Mr. Wu.

158. Mr. Wu has demanded a written inventory of his and family's personal property valuables from the Property by Ms. Zhang, or those purporting to act on her behalf.

159. Ms. Zhang and her agents have refused to provide any written inventory of the personal property and valuables to Mr. Wu.

160. Ms. Zhang and her attorneys have admitted to retaining documents and things that Ms. Zhang's attorneys claim belong to Ms. Zhang's attorneys' other clients—clients not a party to this lawsuit.

161. Despite repeated demand, neither Ms. Zhang nor her attorneys have returned all of the personal and business property taken from the Property during the weekend of May 29, 2022 through August 1, 2022.

162. Upon information and belief, during the removal and/or transport of Mr. Wu's and his family's personal property and valuables from Property, certain amounts of cash, electronic devices, important documents and other valuables were taken, and never put in storage.

163. Ms. Zhang, in concert with others who have yet to be identified, conspired to wrongfully remove Mr. Wu's and his family's personal property from the Property and keep it for his/her/their own.

164. Ms. Zhang, as well as those purporting to act on her behalf, are liable for common law theft and/or conversion of Mr. Wu's and his family's personal and business property and valuables.

165. Mr. Wu estimates that the value of the personal and business property and valuables wrongfully removed from Property exceeds $200,000.

166. Upon information and belief, the personal and business documents wrongfully retained by Ms. Zhang and her attorneys for "others" have been "used" by Ms. Zhang's attorneys to undermine Mr. Wu's business interests and instigate or further the interests of their own clients-clients not a party to this lawsuit.

167. Ms. Zhang and her co-conspirators are liable for the loss of Mr. Wu's and his family's personal and business property and valuables in amounts to be proven at trial.

168. The conduct set forth above was undertaken intentionally, willfully or in reckless disregard for the interests and civil rights and protections of Mr. Wu and warrants the imposition of punitive damages against Ms. Zhang and her co-conspirators.

**COUNT XII**

Unfair and Deceptive Trade Practices/ Violation of HRS § 480-2

169. Plaintiff realleges the allegations contained in paragraphs 1 - 168 as if fully set forth herein.

170. Mr. Wu's contribution of funds towards the purchase of the Property (as detailed herein) constitute a personal investment.

171. As detailed herein, Mr. Wu sought to protect his personal investments for the Property, by among other things, committing money for the extensive repairs and renovations to the Property, by making payments to Ms. Zhang for the property taxes for the Property, and by agreeing to offset unforeseen costs and plans for the Property by entering into the Lease and paying Ms. Zhang rent.

172. Mr. Wu paid additional consideration in the form of rent in order to protect his interests in the Property.

173. Mr. Wu has standing as a consumer under Hawai`i Revised Statutes ("***HRS***") § 480-2 to bring a claim against Ms. Zhang for unfair and deceptive trade practices.

174. Ms. Zhang engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, including but not limited to:

1. Falsely representing that she and Mr. Wu are not joint venture partners with respect to the Property;
2. Misleading Mr. Wu and wrongfully acting to remove Mr. Wu from Property by making false representations, including but not limited to, among other things, that:
    - i. Mr. Wu is only a property manager pursuant to an "oral" agreement;
    - ii. Mr. Wu never resided at the Property;
    - iii. Mr. Wu has no legal rights or interests in the Property;
    - iv. Ms. Zhang did not know who Mr. Wu was;

v. The Property at the time of the break-in, in or around July 29 2022, was not being occupied by anyone;

vi. The personal property and valuables existing at the Proper at the time of the break-in belonged to Ms. Zhang; and

vii. The personal and business documents, papers and information retained wrongfully by Ms. Zhang and her attorneys belong to other "clients" of Ms. Zhang's attorneys.

3. Wrongfully conspiring, without any notice, consent or cause, to remove Mr. Wu from the Property;

4. Wrongfully conspiring, without proper consent, to remove and keep important confidential information, documents and devices for the benefit of Ms. Zhang and her attorneys;

5. Falsely representing that Mr. Wu never paid rent to Ms. Zhang, or others purporting to act on her behalf;

6. Falsely characterizing Mr Wu's contributions to Ms. Zhang as a "loan"; and

7. Giving assurances to Mr. Wu that she would honor the terms of their joint venture agreement and Lease.

175. Ms. Zhang's misconduct, and the misconduct of her representatives acting on her behalf, have directly caused injury and damage to Mr. Wu's personal investments, his contributions to the joint-venture partnership, his interests in the Property, his personal and business property and belongings.

176. Mr. Wu has suffered, and continues to suffer injury as a result of Ms. Zhang's wrongful actions and he is entitled to an award of treble damages as a result of the harm sustained, in addition to an award of attorneys' fees and costs pursuant to HRS § 480-13.

**COUNT XIII**

Violation of HRS § 521-53/Wrongful Eviction

177. Plaintiff realleges the allegations contained in paragraphs 1 - 176 as if fully set forth herein.

178. A valid Lease exists between the parties obligating Ms. Zhang to comply with the provisions of Hawai`i's landlord/tenant code, codified as HRS § 521, *et. seq.*

179. As detailed herein, Mr. Wu has fully performed pursuant to the term of the Parties' Lease.

180. Pursuant to HRS § 521-53(b), a landlord must provide tenant a two days' notice of his/her intent to access the subject property.

181. As described herein, Ms. Zhang failed to provide Mr. Wu any notice of her intent to access the Property, before she—or those agents acting on her behalf or at her direction—wrongfully entered the property on or about July 29, 2022.

182. Ms. Zhang's wrongful actions were not done for any emergent purpose.

183. Ms. Zhang's wrongful entry and access to the Property on or about July 29, 2022 were done intentionally and willfully with the express intent to remove Mr. Wu and his family from the Property in violation of the Parties' Lease agreement.

184. Ms. Zhang, as well as those acting on her behalf, violated HRS § 521-53(b). They conspired together to wrongfully evict Mr. Wu, and (as described herein) specifically undertook steps to do so.

185. Their actions constitute a wrongful eviction.

186. Mr. Wu has suffered and continues to suffer damages as a result of their actions, in amounts to be proven at trial.

187. The conduct set forth above was undertaken intentionally, willfully or in reckless disregard for the interests of Mr. Wu and others and warrants the imposition of punitive damages against Ms. Zhang and her co-conspirators.

**COUNT XIV**
Equitable Lien

188. Plaintiff realleges the allegations contained in paragraphs 1 - 187 as if fully set forth herein.

189. While title to the property is in the name of Defendant, pursuant to the JV Agreement, Plaintiff has a twenty-five percent (25%) share of the Property.

190. As described herein, Plaintiff has advanced and invested additional funds for the upkeep and maintenance of the Property.

191. Plaintiff has an equitable lien against the Property based upon the JV Agreement and Plaintiff's contribution of funds and services advanced and invested in the Property, the exact amount of which shall be proved in trial.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Wu prays for judgment in his favor against Ms. Zhang, and any co-conspirators, as follows: (which relief may be granted cumulatively or alternatively):

A. General damages in amounts to be proven at trial;

B. Special and punitive damages, if applicable, and in amounts to be proven at trial;

C. Treble damages, and award of attorneys' fees and costs, pursuant to HRS § 480-13;

D. An accounting as members of the joint venture;

E. Pre- and post-judgment interest at the maximum allowable rate;

F. Specific performance;

G. An award of Plaintiff's attorneys' fees and costs of suit; and

H. A declaratory judgment determining that the JV Agreement is valid, binding and enforceable against Defendant;

I. An injunction enjoining Defendant from cancelling or otherwise interfering with Plaintiff's right of quiet use and enjoyment of the Property under the terms of the Lease

J. An injunction enjoining Defendant from cancelling or otherwise interfering with Plaintiff's rights of first refusal under the Lease and JV Agreement;

K. The imposition of an equitable lien; and

L. Such other relief as this Court deems just and proper.

Date: Honolulu, Hawaii, July 21, 2023

/s/ *Stephanie E.W. Thompson*
STEPHANIE E.W. THOMPSON
ROBERT J. BROWN

Attorneys for Plaintiff DI WU

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| DI WU<br><br>Plaintiff,<br><br>vs.<br><br>DANDAN ZHANG AKA DAN DAN ZHANG, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS, CORPORATIONS, OR ENTITIES 1-20,<br><br>Defendants. | CIVIL NO.: 1CCV-22-0000964<br><br>VERIFICATION |

**VERIFICATION**

STATE OF ______________________ )
) SS:
COUNTY OF ____________________ )

DI WU, Plaintiff in the above-entitled action, being duly sworn, deposes and says:

That he has read the foregoing Second Amended Verified Complaint, and the attached exhibits (A and B), knows the contents thereof, and that the same is true to the best of his knowledge and belief.

______________________________
DI WU

Subscribed and sworn to before me
this 17th day of July, 2023.

______________________________
Notary Public, State of CA

______________________________
Print Name Hanif Mohammad
My commission expires: 05/22/2026

HANIF MOHAMMAD
Notary Public - California
Los Angeles County
Commission # 2401963
My Comm. Expires May 22, 2026

2830385

# EXHIBIT A

Property investment agreement 05.28.2019
Party A: Dan-dan Zhang. ID Number: G40409420
Party B: Di Wu. ID Number:G51525965

After friendly consultation with each other, Part A and B have reached the following agreement on the joint purchase property in
1039 Koohoo Pl, Kailua 96734, Hawaii:

1. The total purchase price of the property is US dollars1,850,000. Party A provides 75% of the total fund. Party B provides 25% of the total fund.

2. Since the property is in tear down condition, needs to be renovated to become inhabitable. the renovation cost will forecast would be above 185,000 US dollars or market value, Party A contributes 75%, Party B contributes 25%

3. Party A will make all best she can in the real estate escrow procedures, and Party A will be the title holder on the property deed, which is convenient for the property tax exemption. Party A enjoys 75% of the above-mentioned jointly purchased property rights, and Party B enjoys 25%.

4. After the renovation of the property, 20% of the rental income will use for property maintenance, cleaning and other costs of the property, Net rental income after deducting basic expenses such as property management fees, property taxes, utilities, etc., is distributed according to the proportion of capital contribution, party A gets 75%, and Party B gets 25%. Before January 31 of each year, Party B will brief Party A and transfers the rental income belonging to Party A to the designated account

5. After renovations both parties agree to put the property into a joint families trust. If the property needs to be sold in the future or left in the form of a trust to the heirs of both parties, the two parties may reach a consensus through friendly consultation.

6. Neither party may transfer the common property, provide mortgage security for itself or to a third party, or contribute in any kind without the consent of both parties.

7. If one party transfers its share of the property to the third party, the other party has the right of first refusal under the same conditions.

8. Because the market appreciation part of the property belongs to both parties, the rights and interests are distributed in proportion to the capital contribution of both parties.

9. In the event of loss or expropriation of real estate caused by force majoure or government policies, the risk shall be borne jointly by both parties, and the compensation shall be distributed by both parties in proportion to the capital contribution.

10. Neither party shall affect the ownership or use of the joint property due to the debts of the individual, otherwise, the other party shall be compensated for the losses incurred.

11. Both parties shall jointly hold the shares in the real estate, and all business activities and creditor's rights, debts, disputes, etc. arising therefrom shall be jointly borne by both parties in accordance with the proportion of capital contribution.

12. The parties A and B sign this agreement for the purpose of win-win cooperation, and if any dispute arises, it shall be resolved by the two parties through friendly consultation.

13. This Agreement shall be made in duplicate, one for each Party, and shall enter into force upon signature by the Parties.

Party A. [signature] Party B. [signature]

EXHIBIT A

# 共同出资协议书05.28.20.

甲方：Dandan Zhang　　证件号：G40409420
乙方：Di Wu　　证件号：G51525965

甲乙双方经友好协商，就共同出资购买位于夏威夷1039 Koohoo Pl, Kailua 96734一处房产，达成以下协议：

1. 该房产购入总价壹佰捌拾伍万美金（USD1,850,000），按照合同约定在交割日closing day之前甲方出资购房总价的75%，壹佰叁拾捌万柒仟伍佰美金(USD1,387,500)，乙方出资购房总价的25%，肆拾陆万贰仟伍佰美金(USD462,500)。
2. 由于该房产需要重新修整之后才能入住，整修费用以185,000美金计，甲方出资75%，乙方出资25%，工程时间控制在两个月之内完成。
3. 甲方配合办理房产过户交易手续，房屋产权证上甲方为持有人，方便后续申请唯一房屋物业税减半优惠。甲方享有上述共同所购物业产权的75%，乙方享有25%。
4. 该房产重修之后用于出租，租金收入部分20%支付给物业管理公司，由指定的物业管理公司对该房产进行运营维修清洁等管理，此事项由甲方授权乙方代为负责。扣除物业管理费、物业税、水电费等基本开销之后的租金净收入，按照出资比例进行分配，甲方获取75%，乙方获取25%。每年1月31日前乙方向甲方公开账目，并将属于甲方的租金收益转入甲方指定账户。
5. 该房产今后如需出售或者以信托形式留给甲乙双方继承人，双方可经友好协商达成共识。
6. 未经双方协商同意，任何一方不得将共有房产进行转让、为自己或第三人提供抵押担保及作为实物出资等。
7. 如一方对外转让房产份额，另一方在同等条件下有优先购买权。
8. 因该房产的市场增值部分，属于双方共同享有，权益按双方出资比例进行分配。
9. 因不可抗力或政府政策等原因，导致的房产损失、被征收等情形出现，风险由双方共同承担，所得补偿由双方按出资比例分配。
10. 任何一方不得因个人的债务导致共有房产的所有权、使用权收到影响，否则，应赔偿另一方所产生的损失。
11. 甲乙双方共同持有该房产股份，一切经营行为及产生的债权、债务、纠纷等由甲乙双方按照出资比例共同承担。
12. 甲乙双方本着合作共赢的目的签订此协议，如产生任何争议，应由双方经友好协商解决。
13. 本协议一式两份，双方各执一份，自双方签字之后生效。

甲方签字：　　乙方签字：

# EXHIBIT B

**RESIDENTIAL LEASE AGREEMENT**

THIS NOTICE OF RESIDENTIAL LEASE AGREEMENT ("Agreement") dated *Jun 30th 2021* is made and entered into, by and between Di Wu, Married ("Tenant") and Dandan Zhang ("Landlord"), Married. Di Wu is the co-owner of the property.

I. RECITALS

1. Landlord is the fee owner of the certain real property being, lying and situated at 1039 Koohoo pl, Kailua, HI 96734 and further identified by Tax Map Key No. (1) 4-3-006-160-0000 ("Premises");
2. Landlord desires to lease the Premises to Tenant pursuant to the terms and conditions contained herein; and
3. Tenant desires to lease the Premises from Landlord pursuant to the terms and conditions contained herein;

II. TERMS AND CONDITIONS

1. Lease Term: Landlord leases to Tenant and Tenant leases from Landlord, the Premises together with any and all appurtenances thereto, for a term of 10 years from Jul 1st, 2021 through Jul 1, 2031 ("Term") This Lease shall automatically convert to a month to month tenancy unless cancelled in writing by either party no less than 60 days from the desired termination date. The Term may be extended by written agreement of both the Tenant and the Landlord and all other terms and conditions shall continue to apply unless agreed to otherwise
2. Rent: The total yearly rent for the Term agreed to above is TWENTY THOUSAND DOLLARS ($20,000.00) ("Rent") per year payable on the last day of the year.
3. Payment Address: All payments shall be made to the Landlord and sent to the following address:

   Both parties agree

4. Security Deposit: Landlord and Tenant agree that a security deposit is not required.
5. Use of Premises: The Premises shall be used and occupied by Tenant and Tenant's family, and other rentals or sublease purpose.



EXHIBIT B

6. **Utilities:** Tenant shall be responsible for arranging for and paying for all utility services required on the Premises.
7. **Governing Law:** This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Hawaii and City and County of Honolulu.
8. **Severability:** If any provision of this Agreement is, for any reason and to any extent, determined to be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected.
9. **Binding Effect:** The covenants, obligations, provisions, and conditions in this Agreement shall be binding on the heirs, legal representatives, agents, and assigns of Tenant and Landlord.
10. **Notice:** Any written notice required or permitted under this Agreement or under governing law shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested. Landlord or Tenant may change the place notice is to be given under this paragraph by written notice to the other party sent United States certified mail, return receipt requests to the last valid address under this paragraph.
11. **Execution in Counterparts and Copies:** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument. The parties are entitled to rely upon a copy or facsimile signature of the other parties to this Agreement transmitted via electronic mail or telecopier.

Landlord: [signature] Tenant: [signature]

| STATE OF HAWAI'I<br>CIRCUIT COURT OF THE<br>FIRST CIRCUIT | **SUMMONS**<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER<br>1CCV-22-000964 |
|---|---|---|

| PLAINTIFF VS. | DEFENDANT(S) |
|---|---|
| DI WU | DANDAN ZHANG AKA DAN DAN ZHANG, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS, CORPORATIONS, OR ENTITIES 1-20, |

PLAINTIFF'S NAME & ADDRESS, TEL. NO.

STEPHANIE E. W. THOMPSON 8399-0
ROBERT J. BROWN 10174-0
Starn O'Toole Marcus & Fisher
733 Bishop Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 537-6100

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to file with the court and serve upon

STEPHANIE E. W. THOMPSON, ESQ. and ROBERT J. BROWN, ESQ.

______________________________________________,

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| The original document is filed in the Judiciary's electronic case management system which is accessible via eCourt Kokua at: http:/www.courts.state.hi.us | **Effective Date of 28-Oct-2019**<br>**Signed by: /s/ Patsy Nakamoto**<br>**Clerk, 1st Circuit, State of Hawai'i** |
|---|---|

In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the Circuit Court Administration Office on OAHU- Phone No. 808-539-4400, TTY 808-539-4853, FAX 539-4402, at least ten (10) working days prior to your hearing or appointment date.

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| DI WU<br><br>Plaintiff,<br><br>vs.<br><br>DANDAN ZHANG AKA DAN DAN ZHANG, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS, CORPORATIONS, OR ENTITIES 1-20,<br><br>Defendants. | CIVIL NO.: 1CCV-22-0000964<br><br>CERTIFICATE OF SERVICE |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date indicated below, a copy of the foregoing document was duly served as indicated upon the following parties at their last known address:

| **PARTY** | **EMAIL VIA JEFS** | **HAND DELIVERY** | **U.S. MAIL** |
|---|---|---|---|
| YURIKO J. SUGIMURA, ESQ.<br>MATTHEW MURAKAMI, ESQ.<br>700 Bishop Street, Suite 2100<br>Honolulu, Hawaii, 96813<br>Attorney for Defendant<br><br>DAN DAN ZHANG<br>AKA DANDAN ZHANG | **X** | | |

Date: Honolulu, Hawaii, July 21, 2023.

/s/ *Stephanie E.W. Thompson*
STEPHANIE E.W. THOMPSON
ROBERT J. BROWN