DI WU
2995 Woodside Rd., #199
Woodside, California 94062
Telephone: 628-283-3260
Email: Difinity812@gmail.com
Plaintiff, Pro Se

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| DI WU,<br>Plaintiff,<br><br>v.<br><br>KING EYE LLC, *et al.*,<br>Defendants. | Civil No. 1:26-cv-00350-DKW-WRP<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO KING EYE LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (ECF NO. 22)**<br><br>Tendered concurrently with Rule 6(b)(1)(B) motion; acceptance requested. Exhibit A to that motion.<br><br>Hearing: November 13, 2026, 10:00 a.m.<br>Judge: Derrick K. Watson |

## I. INTRODUCTION

King Eye asks this Court to dismiss a well-pleaded federal RICO and fraudulent-transfer complaint before a single fact has been tested in discovery. It does so on a jurisdictional theory the Supreme Court has squarely rejected, and on a merits attack that ignores the governing rule: on a motion to dismiss, every well-pleaded fact is taken as true and every reasonable inference is drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Measured by that standard, the First Amended Complaint ("FAC," ECF No. 16) states claims on every count, and the motion should be denied.

Plaintiff states at the outset what he does, and does not, ask this Court to do. He does **not** ask this Court to sit in appellate review of any Hawaiʻi state-court judgment, to vacate it, or to restore title by overruling it. He asks only that this Court do what it alone can do: adjudicate federal RICO claims and Hawaiʻi fraudulent-transfer claims arising from the **defendants' own conveyances of the Property in 2024 and 2026** — conveyances executed *after*, and in the shadow of, the very litigation King Eye now invokes.

What King Eye labels a "final state judgment" entitled to preclusive force is, on the face of the documents King Eye itself submitted, no merits adjudication at all. It is a summary judgment entered on a procedural default — deemed admissions arising from a single discovery response served a few days late by a *pro se* litigant — on the strength of which the state court treated Plaintiff's signed joint-venture agreement as a forgery **without weighing one page of the documentary and sworn record** establishing Plaintiff's investment and his paid-for improvements. FAC ¶ 36. That judgment is on appeal (CAAP-26-0000401), and under settled Hawaiʻi law it is **not final** for preclusion purposes while that appeal is pending. A judgment that decided nothing on the merits, and is not even final, cannot carry the dispositive weight King Eye asks it to bear.

Plaintiff has pleaded aggressively and candidly, separating what the record proves from what discovery will prove, and pleading the latter on information and belief as the Rules

permit. He does not overreach. But he will not concede away a complaint that states a claim. The motion should be denied.

**II. STANDARD OF REVIEW**

A Rule 12(b)(6) motion tests the sufficiency of the pleadings, not the ultimate merits. The Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim survives if it pleads facts that permit a reasonable inference of liability; it need not prove the case or exclude every innocent explanation at the pleading stage. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A *pro se* complaint is construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Where fraud is alleged, Rule 9(b) requires particularity as to the "who, what, when, where, and how." But malice, intent, knowledge, and other conditions of mind may be alleged generally. Fed. R. Civ. P. 9(b). And where the specific facts are peculiarly within the defendants' knowledge — here, the concealed beneficial ownership of the shell transferees and the source and path of the funds recited as consideration — the particularity requirement is relaxed, and allegations on information and belief are permitted when accompanied by a statement of the facts on which the belief is founded. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). That is precisely how the FAC pleads: it alleges the concrete, documented spine of the scheme, and it pleads the concealed internals on information and belief, identifying the documentary basis for each inference and the discovery that will confirm it.

**III. ROOKER-FELDMAN DOES NOT BAR THESE CLAIMS — KING EYE HAS FILED THE WRONG MOTION**

King Eye's lead argument is that this Court lacks subject-matter jurisdiction because the FAC is, in substance, an appeal from a state judgment barred by *Rooker-Feldman*. Mot. 5–8. The argument misreads the doctrine, and the Supreme Court has drawn the line directly against King Eye.

*Rooker-Feldman* is a "narrow" doctrine. It is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by **state-court judgments** rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine does **not** reach a suit simply because it "denies a legal conclusion that a state court has reached." *Id.* at 293. When a plaintiff "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached," the district court has jurisdiction; whatever preclusive effect the state judgment carries is governed by ordinary preclusion law, which "is not a jurisdictional matter." *Id.* at 292–93.

That is this case. Plaintiff's injury is not the state judgment. His injury is the **transfer of the Property beyond his reach** — the June 3, 2024 conveyance to Koohoo Hale LLC (FAC ¶ 31) and the February/March 2026 conveyance to King Eye (FAC ¶ 32) — each executed by private parties, for the purpose of defeating Plaintiff's asserted interest and concealing beneficial ownership, while his claim and appeals were pending and known to the persons controlling the Property. A fraudulent-transfer claim and a RICO claim attacking those conveyances are the paradigm of an **independent claim**: they ask this Court to undo the defendants' *own* acts, not to review a state court's. *Exxon Mobil*, 544 U.S. at 293.

King Eye's own authority confirms the point rather than defeating it. In *T.M. v. University of Maryland Medical System Corp.*, No. 25-197 (U.S. June 18, 2026), the Court held that the availability of a pending state appeal does not itself lift the *Rooker-Feldman* bar where the federal suit does seek review of the judgment. Plaintiff embraces that holding: he does **not** cite his appeal as a license for federal appellate review. He cites his independent injury from the defendants' conveyances. *T.M.* bars federal plaintiffs who ask the district court to reverse a judgment; it has nothing to say to a plaintiff who asks the district court to avoid a fraudulent transfer the defendants executed themselves. The question *Exxon Mobil* poses —

whether the injury was *caused by the judgment* and whether the relief would *review and reject it* — is answered against King Eye on both prongs: the injury is the conveyance, and the relief is avoidance of the conveyance.

Because preclusion is not jurisdictional, *Exxon Mobil*, 544 U.S. at 293, King Eye's invocation of the state judgment is — at most — an affirmative defense to be raised on the merits, not a basis to strip this Court of jurisdiction. The jurisdictional motion fails.

## IV. THE STATE JUDGMENT HAS NO PRECLUSIVE EFFECT — IT WAS NEVER "ACTUALLY LITIGATED," AND IT IS NOT FINAL

Even reached as a merits defense, King Eye's preclusion theory collapses on the documents King Eye filed. Under 28 U.S.C. § 1738, this Court gives the state judgment only the preclusive effect Hawai‘i law would give it — no more. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Hawai‘i law gives it none here, for two independent reasons.

### A. Nothing was "actually litigated and determined" — the judgment rests on a sanction-based default, not on discovery or fact-finding.

Issue preclusion applies only to an issue that was "actually litigated and finally decided" in the prior action. *Bremer v. Weeks*, 104 Hawai‘i 43, 54, 85 P.3d 150, 161 (2004). An issue resolved by default, admission by operation of a procedural rule, or sanction is, by definition, **not** "actually litigated." That is black-letter preclusion law. *See* Restatement (Second) of Judgments § 27 cmt. e (1982) ("In the case of a judgment entered by … default, none of the issues is actually litigated.").

The record King Eye submitted shows exactly that posture. The state court's summary judgment "did not rest on any merits determination. It rested on a procedural default": appearing *pro se*, Plaintiff served his response to a request for admissions a short time late, and the requests were "deemed admitted under Hawai‘i Rule of Civil Procedure 36." FAC ¶ 36. "On the strength of those deemed admissions alone, the court treated the joint-investment

agreement and a residential lease as forgeries and rejected Plaintiff's asserted title." *Id.* The court "weighed none" of the substantial documentary evidence of record — the certified bank, wire, and escrow records showing Plaintiff's capital contribution, and the licensed contractor's authenticated invoices for the improvements Plaintiff paid to furnish. *Id.* "[T]he dismissal turned entirely on the deemed admissions arising from a single late-served discovery response." *Id.*

A judgment produced that way cannot preclude the facts at the heart of this case. No issue of Plaintiff's ownership, of the authenticity of the joint-venture agreement, of his funding, or of his improvements was ever "actually litigated and determined"; each was resolved by the mechanical operation of Rule 36 against a *pro se* party, without evidence weighed and without a day of fact-finding. The one thing Plaintiff has asked for from the beginning — that these facts be decided on the evidence through discovery — has never occurred. Preclusion exists to protect judgments that resolved contested facts on their merits. It does not exist to convert a discovery-sanction default into an unreviewable finding that a signed contract is a forgery, binding on non-parties in a different court. Hawai‘i law withholds preclusive effect from exactly this kind of judgment, and this Court should too.

**B. The judgment is not final — it is on appeal.**

Independently, a timely-appealed trial-court judgment is **not final** for res judicata purposes while the appeal remains pending. *In re Mitsuo Yoneji Revocable Trust*, No. CAAP-15-0000188, slip op. at 12–13 (Haw. App. Apr. 16, 2020); *Littleton v. State*, 6 Haw. App. 70, 75, 708 P.2d 829, 833 (1985). Plaintiff timely appealed; CAAP-26-0000401 is pending (Notice of Appeal filed Feb. 23, 2026; docketed May 27, 2026). FAC ¶ 36. King Eye acknowledges the appeal. Mot. 3. Under § 1738 and Hawai‘i law, this Court must assess finality under Hawai‘i law before according any preclusive effect — and under *Yoneji* and *Littleton*, a judgment on appeal is not yet final. On that ground alone, the state judgment cannot support dismissal.

King Eye was not a party to the state case and acquired its interest through the very conveyance Plaintiff attacks here; it cannot claim more preclusive benefit than Zhang herself could, and Zhang could claim none from a non-final, never-litigated default. If the Court concludes that any claim is best sequenced to await the state appeal, the appropriate course is a **limited stay**, not dismissal — a stay preserves jurisdiction and prejudices no one, whereas dismissal with prejudice of a complaint that states a claim would be reversible error.

**V. THE FAC STATES A RICO CLAIM — THE ELEMENTS ARE MET ON THE WELL-PLEADED FACTS**

King Eye attacks each RICO element in isolation and demands at the pleading stage the proof that belongs to trial. Taken as a whole and with every inference drawn for Plaintiff — as Rule 12(b)(6) requires — the FAC pleads each element.

**A. Enterprise.** The FAC pleads an association-in-fact enterprise — the "1039 Property Enterprise" — with a common purpose (acquiring, transferring, retaining, and concealing a single Property to defeat Plaintiff's 25% interest and conceal beneficial ownership), relationships among the associates, and longevity spanning the 2020 joint venture through the 2024 and 2026 transfers. FAC ¶¶ 22–25. That is precisely what *Boyle v. United States*, 556 U.S. 938, 946 (2009), requires: a purpose, relationships, and longevity sufficient to pursue the purpose. The FAC does not rest on "an LLC's bare existence"; it pleads distinct, coordinated roles — Zhang as titleholder-nominee, "Tim Mo" as operational coordinator who staged the 2022 physical takeover, Koohoo Hale and King Eye as successive concealed-ownership transferees, Shi Chen as the manager of record, and the Doe principals who funded and directed the chain. FAC ¶¶ 22–24, 28. An enterprise is adequately pleaded.

**B. Conduct — participation in the operation or management.** King Eye says it was a passive title recipient. Mot. 6–7. The FAC pleads otherwise: King Eye is a Delaware shell formed the **same day** as the deed to it, behind a single foreign nominal member, used to receive and hold the Property off-market as the terminal link in the concealment chain. FAC ¶¶

32–34. Acquiring an off-market property whose only public listing had been withdrawn "would likely have required a private introduction," and on information and belief King Eye and Yao "learned of and acquired the off-market Property because they were acting in concert with, and at the direction of, the persons controlling the Enterprise — not as an unconnected arms-length purchaser." FAC ¶ 33. Taking those allegations as true, King Eye did not passively receive title; it was created to perform the enterprise's final, essential act of concealment. That satisfies *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) — participation in the conduct of the enterprise's affairs — at the pleading stage. Pleading an alternative conspiracy theory in the same paragraph does not abandon the primary participation allegation; Rule 8(d)(2)–(3) expressly permits pleading in the alternative.

**C. Pattern — relatedness and continuity.** The predicate acts are related: both the 2024 and 2026 conveyances concern the **same Property**, serve the **same purpose** (defeating Plaintiff's interest and concealing ownership), and employ the **same method** (transfer to a concealed-ownership shell). *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (relatedness shown by same purposes, results, participants, victims, or methods). Continuity is pleaded both ways *H.J. Inc.* recognizes: closed-ended continuity across a multi-year scheme (2020–2026), and open-ended continuity in that the concealment is ongoing — the Property remains held behind a foreign nominal member and the enterprise's methods threaten repetition. *Id.* at 241–42. The two recorded conveyances are not the whole of the pattern; they are its documented spine, situated within a continuing course of conduct that includes the 2022 takeover (pleaded as pattern evidence, FAC ¶¶ 28–29) and the enterprise's repeated use of interposed foreign nominees (FAC ¶¶ 34–35). A pattern is adequately pleaded.

**D. Predicate acts — wire fraud, pleaded with particularity.** The FAC identifies the predicate episodes, their instruments (recorded deeds and the interstate/international communications and fund transfers effecting them), their approximate dates, and their deceptive purpose. FAC ¶ 59, incorporating ¶¶ 16–17, 24, 30–34A. The scheme to defraud is

concrete: to strip a joint owner of a documented 25% interest by routing title through shells while concealing beneficial ownership. Rule 9(b)'s particularity requirement is satisfied as to the acts within Plaintiff's knowledge, and relaxed as to the concealed internals — the precise routing of the closing wires and the identity of the persons who introduced and instructed the transferees — which are "peculiarly within the [defendants'] knowledge." *Neubronner*, 6 F.3d at 672. Those details are pleaded on information and belief with their documentary basis stated, and they are the direct object of the discovery Plaintiff seeks. (Plaintiff's proposed Second Amended Complaint pleads money laundering under 18 U.S.C. §§ 1956–1957 as an additional and independent predicate theory; this opposition defends the FAC as filed, and the wire-fraud predicate alone states a claim.)

**E. The three served-and-defaulted defendants confirm the enterprise.** This is not an arms-length real-estate dispute, and the docket proves it. Of the persons and entities alleged to have executed and received the concealment transfers, three — "Tim Mo," Koohoo Hale LLC, and Shi Chen (Koohoo Hale's manager of record, personally served at **1039 Koohoo Place itself** on October 4, 2026, ECF No. 30) — were served and have **not appeared or defended**. Only King Eye, the offshore terminal transferee, has appeared, and only to contest jurisdiction. Drawing the inference in Plaintiff's favor, as Rule 12(b)(6) requires, the refusal of the operational coordinator, the first shell, and its manager to appear and answer — while the last-in-line foreign shell litigates only threshold jurisdiction — is affirmative circumstantial support for the pleaded enterprise and its relationships, and it directly rebuts King Eye's "ordinary innocent purchaser" framing. Plaintiff does not contend a default is an admission of legal conclusions binding on King Eye; he contends, correctly, that a coordinated enterprise is a more plausible explanation for this pattern of non-appearance than coincidence — which is all Rule 12(b)(6) requires.

**F. Injury and causation.** Plaintiff pleads a concrete injury to property: the impairment and threatened destruction of his recoverable 25% interest in the Property, caused directly by

the challenged transfers that moved the Property beyond his reach. FAC ¶¶ 13, 31–32. That is a domestic injury to business or property under *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 346 (2016), and it bears the "direct relationship" to the predicate transfers that *Holmes v. SIPC*, 503 U.S. 258, 268 (1992), requires: the fraudulent conveyances are the proximate cause of the impairment of Plaintiff's interest in the very asset conveyed. The FAC expressly limits its RICO damages and disclaims double recovery (FAC ¶¶ 57, 60); it does not treat historical improvement expenditures as automatic RICO damages, but as the measure of the interest the transfers impaired.

**VI. THE HAWAIʻI-LAW CLAIMS STATE CLAIMS**

**Fraudulent transfer (HRS ch. 651C).** King Eye argues Plaintiff must be *its* direct creditor. Mot. The statute says otherwise: a creditor with a "claim" — defined to include a "right to payment, whether or not the right is … disputed [or] contingent," HRS § 651C-1 — may obtain avoidance and transferee remedies against a subsequent transferee under HRS §§ 651C-7 and 651C-8. A creditor need not already own the transferred asset; that is the entire point of a fraudulent-transfer action. Plaintiff pleads a disputed, contingent claim arising from his funding and improvements (FAC ¶¶ 16–21), and transfers made with actual intent to hinder, delay, or defraud (FAC ¶¶ 30–32). King Eye's § 651C-8 good-faith-purchaser defense is a fact question — a recited price "does not alone decide knowledge or good faith," and the FAC pleads King Eye's knowledge and the off-market, same-day-formation circumstances that negate good faith (FAC ¶¶ 32–34). That defense cannot be resolved on the pleadings.

**Constructive trust, equitable lien, unjust enrichment, quantum meruit.** These are pleaded in the alternative under Rule 8(d), each supported by Plaintiff's documented contribution and improvements and the defendants' receipt and retention of their value. FAC ¶¶ 16–21. Whether the elements are ultimately proved is for the merits; they are adequately alleged. Plaintiff does not seek to impose Zhang's obligations on King Eye "solely through title succession"; he seeks the established transferee and equitable remedies the statute and Hawaiʻi

equity provide.

**Supplemental jurisdiction.** Because the federal RICO claims state a claim, the Court retains original jurisdiction and supplemental jurisdiction over the related state claims. 28 U.S.C. §§ 1331, 1367. Even if any federal claim were dismissed, § 1367(c)(3) permits — but does not require — declining supplemental jurisdiction; it would not authorize a merits dismissal **with prejudice** of the state claims, which, if declined, should be dismissed **without prejudice**.

## VII. ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

If the Court finds any deficiency, leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal of a *pro se* complaint without leave to amend is improper unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc). Plaintiff concurrently moves for leave to file a Second Amended Complaint, lodging the complete proposed pleading and the LR 10.4 comparison; the proposed amendment adds a money-laundering predicate theory and further detail. The Court should resolve any pleading deficiency by permitting amendment, not by dismissing with prejudice a complaint that — on the facts pleaded and the inferences owed to Plaintiff — states a claim.

## VIII. CONCLUSION

The motion asks this Court to end this case before Plaintiff has had the one thing he has sought from the start: the chance to prove documented facts through discovery. The jurisdictional theory is foreclosed by *Exxon Mobil*; the preclusion theory fails because the state judgment decided nothing on the merits and is not final; and the RICO and state-law claims are adequately pleaded under the only standard that governs a motion to dismiss. King Eye's motion (ECF No. 22) should be **denied**. In the alternative, Plaintiff requests leave to amend before any dismissal with prejudice, or a limited stay of any claim the Court concludes should await the state appeal. Any dismissal for lack of jurisdiction, or any declination of supplemental jurisdiction, should be **without prejudice**.

DATED: November 2, 2026.

/s/ Di Wu

DI WU

Plaintiff, Pro Se

Difinity812@gmail.com

Tel: 628-283-3260